[Nos. D033131, D033902. Fourth Dist., Div. One. Sept. 12, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
LIONEL ANDREW SCOTT, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III, IV and V.

**COUNSEL**

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany and Jean Hume, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HALLER, J.**—In the first of two trials, a jury found Lionel Andrew Scott guilty of unlawful sexual intercourse by a person 21 years or older with a

minor under 16 years of age (Pen. Code,[2] § 261.5, subd. (d)), and two counts of oral copulation by a person over 21 years of age on a person under 16 years of age (§ 288a, subd. (b)(2)), but was unable to reach a verdict on one count of forcible rape (§ 261, subd. (a)(2)) and two counts of forcible oral copulation (§ 288a, subd. (c)(2)). The trial court declared a mistrial as to the latter three counts. The trial court subsequently found Scott suffered two prior serious/violent felonies or "strikes" (§ 667, subd. (b)-(i)), and sentenced Scott to a total prison term of 50 years to life.

In the second trial, a jury convicted Scott of the three violent sex counts that had been mistried. The trial court set aside the previously imposed sentence and resentenced Scott to state prison for a total term of 75 years to life. Scott appeals both judgments; we have consolidated the appeals.

Scott's principal assignment of error is the retrial on the forcible sex offenses was barred under double jeopardy principles because his convictions of the nonforcible sex offenses in the first trial were lesser included offenses under an accusatory pleading test. Scott also contends the trial court in the first trial erred by (1) not instructing that Scott's reasonable belief the victim was 16 years old was a defense to the nonforcible sex offenses, and (2) finding that a prior felony conviction in Minnesota constituted a strike under the "Three Strikes" law. Additionally, Scott assigns error to the giving of CALJIC No. 17.41.1 in both trials, and the calculation of his conduct credits.

## FACTS

On September 3, 1996, Kristina G. and Pamela G., two 14-year-old friends, were at the Burger King restaurant at the El Camino Real Mall in Carlsbad when they were approached by two men who introduced themselves as "L.A." and "Goody." "Goody" was Scott, who was 40 years old, and L.A. was Scott's 28-year-old brother. Kristina told the brothers she was 16 years old when they asked her age. Pamela said she was 14 years old. The foursome talked about 20 minutes, and L.A. and Kristina exchanged telephone numbers before the men left.

On September 4, L.A. telephoned Kristina and asked if she wanted to go somewhere with him on the following day. Kristina said she would go if she could bring Pamela; and they arranged to meet at the Vista Transit Center. On September 5, L.A. and Scott picked up Kristina and Pamela and drove them to San Diego. On the way, they stopped at a liquor store and bought alcohol, which the men drank during the trip. After stopping in a park, the

---

[2]All statutory references are to the Penal Code.

men took the girls to their apartment to watch movies. The men told the girls there was nothing to worry about because their girlfriends were at the house and they would just watch movies and hang out.

Their apartment was on the second story and had a security screen door with a lock that locked from the inside with a key. Scott's girlfriend, Michelle, and her baby, and L.A.'s girlfriend, Tammy, were inside. Kristina and Pamela sat down in the living room and watched television.

Scott called Kristina into a bedroom and told her he was going to have sex with her even though she did not want to and that she was not going to die from it. Kristina said she was not going to have sex with him and went back to the living room, where she asked L.A. to take her home. L.A. said he was busy and wanted to eat first. Scott took Kristina to a nearby Burger King and they ordered food from the drive-through window. Kristina considered getting out of the car but did not do so because she did not want to desert Pamela, who was still in the men's apartment. Pamela also left the apartment once, going with L.A. and Tammy to rent a video. Pamela did not try to get away because Kristina was in the apartment, and Pamela did not really believe she would be raped if she returned to the apartment even though the men had said they were going to have sex with her.

After Kristina and Scott returned, he took her into a bedroom, and again told her that he was going to have sex with her. She repeatedly said no, but Scott was yelling at her with an angry voice and she was scared. She complied with his orders to take off her clothes and lie down because "at that point [I thought] I was going to get raped [and] I would never be able to leave. He was probably going to kill me or something." Scott proceeded to put his penis in Kristina's vagina. L.A. entered the bedroom, and when Scott left, L.A. raped Kristina.

After Kristina returned to the living room, L.A. called Pamela into a bedroom and raped her.

Later, L.A. raped Kristina again and made her orally copulate him in the back bedroom. When Kristina returned to the living room, Scott grabbed Kristina's arm and pulled her into the bathroom and forced her to orally copulate him two times.

Eventually, Tammy and Michelle drove Kristina and Pamela home. Two weeks later, Kristina and Pamela went to a clinic to be tested for venereal diseases. The clinic contacted police. Kristina and Pamela selected Scott and L.A. from separate photographic lineups.

Scott testified in his first trial that he came to San Diego from Minnesota in July or August 1996, and he and his wife and daughter shared an apartment with his brother, L.A., L.A.'s girlfriend, Tammy, and another woman. Scott vaguely recognized Kristina and Pamela and remembered seeing them at the apartment; however, he denied ever sexually touching either girl. The girls went in a back bedroom with L.A. and Tammy, where they had "their own little party going on." Meanwhile, Scott was sitting on the living room couch watching television with his wife and one-year-old daughter. Scott believed L.A. had herpes, and he would not have sex with any person after L.A. had sex with that person.

Scott did not testify at his second trial.

## DISCUSSION

### I. *Retrial Did Not Violate Double Jeopardy Principles*

In count 1 of the information, Scott was charged with the forcible rape of Kristina, and in count 2, Scott was charged with unlawful sexual intercourse by a person over 21 years with a person under 16 years of age—namely, Kristina. In count 3, Scott was charged with forcible oral copulation with Kristina, and in count 4, Scott was charged with oral copulation by a person over 21 years of age with a person under 16 years of age regarding the same incident. Both counts 3 and 4 dealt with the "first instance" of oral copulation involving Scott and Kristina. In counts 5 and 6, Scott was charged with the same offenses concerning the "second instance" of oral copulation involving him and Kristina.[3]

Scott contends the retrial of the forcible sex offenses should have been barred under section 1023 and double jeopardy principles based on an

---

[3]The information alleged in pertinent part:

"COUNT 1 - Forcible Rape [¶] On or about September 05, 1996, LIONEL ANDREW SCOTT did unlawfully have, and accomplish an act of sexual intercourse with KRISTINA . . . , a person not his spouse, against said person's will, by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury on said person and another, in violation of PENAL CODE SECTION 261(a)(2).

"COUNT 2 - UNLAWFUL SEXUAL INTERCOURSE WITH MINOR UNDER 16 YEARS OF AGE [¶] On or about September 05, 1996, LIONEL ANDREW SCOTT, a person over 21 years, willfully and unlawfully engage[d] in an act of sexual intercourse with KRISTINA . . . , a minor under 16 years of age, in violation of PENAL CODE SECTION 261.5(d).

"COUNT 3 - FORCIBLE ORAL COPULATION [¶] On or about September 05, 1996, LIONEL ANDREW SCOTT did unlawfully accomplish an act of oral copulation with KRISTINA . . . , which act was accomplished against the victim's will by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury on the victim, in violation of PENAL CODE SECTION 288a(c). (first instance)

"COUNT 4 - ORAL COPULATION BY ONE OVER 21 ON PERSON UNDER 16 [¶] On or about September 05, 1996, LIONEL ANDREW SCOTT, being over 21 years of age, did unlawfully

argument that under the accusatory pleading test the nonforcible sex crimes were lesser included offenses of the forcible sex offenses. The contention is without merit.

Preliminarily, we note this claim has been waived because it was not raised below. A plea of double jeopardy cannot be raised for the first time on appeal. (*People v. Scott* (1997) 15 Cal.4th 1188, 1201 [65 Cal.Rptr.2d 240, 939 P.2d 354].) However, we address the merits because Scott has maintained, in a supplemental brief, that his trial counsel's failure to raise this defense constituted ineffective assistance of counsel.

■ A defendant cannot prevail on a claim of ineffective assistance of counsel unless the defendant can establish (1) counsel performed at a level below an objective standard of reasonableness under prevailing professional norms *and* (2) the defense was subjected to prejudice flowing from the deficient performance of counsel. (*People v. Hamilton* (1988) 45 Cal.3d 351, 377 [247 Cal.Rptr. 31, 753 P.2d 1109].) The ineffective assistance claim fails if defendant cannot make a sufficient showing on either of these components. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126 [36 Cal.Rptr.2d 235, 885 P.2d 1].)

*General Legal Principles*

■ The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution ensure a person shall not be placed twice "in jeopardy" for the "same offense." (See also § 687.)

As the high court explained in *Green v. United States* (1957) 355 U.S. 184 [78 S.Ct. 221, 2 L.Ed.2d 199], "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to

participate in an act of oral copulation with KRISTINA . . . , a person under the age of 16, in violation of PENAL CODE SECTION 288a(b)(2). (first instance)

"COUNT 5 - FORCIBLE ORAL COPULATION [¶] On or about September 05, 1996, LIONEL ANDREW SCOTT did unlawfully accomplish an act of oral copulation with KRISTINA . . . , which act was accomplished against the victim's will by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury on the victim, in violation of PENAL CODE SECTION 288a(c). (second instance)

"COUNT 6 - ORAL COPULATION BY ONE OVER 21 ON PERSON UNDER 16 [¶] On or about September 05, 1996, LIONEL ANDREW SCOTT, being over 21 years of age, did unlawfully participate in an act of oral copulation with KRISTINA . . . , a person under the age of 16, in violation of PENAL CODE SECTION 288a(b)(2). (second instance)"

live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Id.* at pp. 187-188 [78 S.Ct. at p. 223].)

As articulated by the Supreme Court in *North Carolina v. Pearce* (1969) 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656], the constitutional prohibition against double jeopardy "consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Fns. omitted.)

Scott seeks relief under the first prong of double jeopardy protections as refined by the "implied acquittal" doctrine. An acquittal barring a second prosecution may be either express or implied by a conviction on a lesser included offense when the jury was given the opportunity to return a verdict on the greater offense. (*Green v. United States, supra*, 355 U.S. at pp. 190-191 [78 S.Ct. at pp. 225-226].) Under the "implied acquittal" doctrine, a guilty verdict on a lesser included offense represents "an implied acquittal of the greater offense of which the jury could have convicted the defendant." (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 511 [183 Cal.Rptr. 647, 646 P.2d 809], fn. omitted.) Double jeopardy principles prohibit a second prosecution when a defendant has been implicitly acquitted of an offense; under the "implied acquittal" doctrine, " 'a verdict of guilty on a lesser included offense constitutes an implied acquittal of the greater offense of which the jury could have convicted the defendant.' " (*People v. Fields* (1996) 13 Cal.4th 289, 299 [52 Cal.Rptr.2d 282, 914 P.2d 832].)

Thus, under Scott's argument, in which he posits that the nonforcible sex crimes were lesser included offenses of the forcible rape and oral copulation counts, he was implicitly acquitted of the latter crimes when the jury convicted him of the nonforcible sex offenses. Accordingly, Scott claims double jeopardy principles and section 1023, which incorporates those principles, barred his retrial on the forcible sex crimes.

Section 1023 provides in relevant part: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, *or for an offense necessarily included therein*, of which he might have been convicted under that accusatory pleading." (Italics added.) When a jury deadlocks on the greater offense, but convicts the accused of a necessarily lesser included offense, the conviction bars a

subsequent prosecution for the greater offense under section 1023. (*People v. Greer* (1947) 30 Cal.2d 589, 596-597 [184 P.2d 512], not followed on other grounds in *People v. Pearson* (1986) 42 Cal.3d 351, 358 [228 Cal.Rptr. 509, 721 P.2d 595], and overruled on other grounds by *People v. Fields, supra*, 13 Cal.4th at p. 308, fn. 6.) The rationale for the rule is straightforward: " 'A conviction of the lesser is held to be a bar to [the] prosecution for the greater on the theory that to [later] convict of the greater would be to convict twice of the lesser.' " (30 Cal.2d at p. 597, quoting *People v. Krupa* (1944) 64 Cal.App.2d 592, 598 [149 P.2d 416].)

 As we shall explain, Scott's double jeopardy argument fails because his basic premise—that the nonforcible sex offenses were lesser included offenses of the forcible sex offenses within the context of double jeopardy principles and section 1023—is incorrect.

 The applicable definition of "necessarily included offenses" for purposes of double jeopardy law "is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. [Citation.]" (*People v. Greer, supra*, 30 Cal.2d at 596, fn. omitted.) This is commonly referred to as the "elements" test, which is met when all the elements of the lesser offense are included in the elements of the greater offense. (*People v. Lopez* (1998) 19 Cal.4th 282, 288-289 [79 Cal.Rptr.2d 195, 965 P.2d 713].) Under this test, which compares the statutory language, an offense is necessarily included if the crimes are defined in such a way as to make it impossible to commit the greater offense without also committing the lesser. (*People v. Greer, supra*, 30 Cal.2d at p. 597.)

 Scott concedes, as he must, that the nonforcible offenses of which he stands convicted are not lesser included offenses under the "elements" test. (*People v. Chapman* (1975) 47 Cal.App.3d 597, 603-604 [121 Cal.Rptr. 315]; *People v. Montero* (1986) 185 Cal.App.3d 415, 433 [229 Cal.Rptr. 750].)[4] The nonforcible sex crimes require the perpetrator and victim to be within certain age limits while the forcible sex crimes do not (see fn. 4, *ante*); thus, the nonforcible crimes are not lesser included offenses of the forcible sex crimes.

---

[4]The elements of forcible rape are: A male and female engaged in an act of sexual intercourse; the two persons were not married; the act of intercourse was against the will of the victim; and the act was accomplished by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury to that person or another person. (§ 261; CALJIC No. 10.00.)

The elements of unlawful sexual intercourse by a person 21 years of age or older with a person under the age of 16 years are: A person 21 years of age or older engaged in an act of sexual intercourse with a person under the age of 16; and these persons were not married to

Nonetheless, Scott maintains that these nonforcible sex crimes are lesser included offenses under the "accusatory pleading" test. A lesser offense is included within the greater offense under the accusatory pleading test " ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." . . .' [Citations.]" (*People v. Lopez, supra,* 19 Cal.4th at pp. 288-289.)[5] Because the various counts specified the same date and victim, and denominated the two acts of oral copulation as "first instance" and "second instance" (see fn. 3, *ante*), Scott argues the alleged nonforcible sex counts corresponded to the alleged forcible sex counts and therefore were lesser included offenses under the accusatory pleading test.

Scott is mistaken. ▄▄ The nonforcible sex offenses were separately pled counts, which were not lesser included offenses merely because they were committed at the same time as the forcible sex crimes.[6]

 In any event, in the double jeopardy context, it does not matter whether or not the nonforcible sex crimes were lesser included offenses

---

each other at the time of the act of sexual intercourse. (§ 261.5, subd. (d); CALJIC No. 10.40.2.)

The elements of forcible oral copulation are: A person participated in an act of oral copulation with the victim; the act was accomplished against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or any other person. (§ 288a, subd. (c)(2); CALJIC 10.10.)

The elements of unlawful oral copulation by a person over the age of 21 years with a person who is under 16 years of age are: A person engaged in an act of oral copulation with a victim; and the victim was under 16 years of age and the other participant was over the age of 21 years. (§ 288a, subd. (b)(2); CALJIC No. 10.45.)

[5]In *People v. Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456], our Supreme Court endorsed the accusatory pleading test as a yardstick for determining whether one offense is included in another in the context of section 1159. The defendant was charged with " 'Robbery, in violation of section 211 . . . committed as follows: That [defendant] . . . willfully, unlawfully, feloniously and forcibly [took] from the person and immediate presence of Jack J. Martens . . . Seventy Dollars and an automobile . . . .' " (*People v. Marshall, supra,* 48 Cal.2d at p. 396.) The defendant waived trial, and the court found him guilty of the lesser offense of taking a vehicle without the owner's consent. (*Ibid.*) Even though the lesser offense did not meet the strict "elements test," the Supreme Court affirmed, finding the language of the accusatory pleading included details of the criminal act and therefore gave the defendant notice of the evidence against which he should be prepared to defend. (*Id.* at pp. 398, 400, 405.) "[A] pleading which forthrightly alleges not only the statutory language of the greatest offense charged but also known details as to the manner of its commission is . . . more fair and, hence, more worthy of the proper stature of the state's attorney than a pleading which alleges the general statutory language and no more." (*Id.* at p. 407.)

[6]"[A] defendant properly may be convicted of two offenses if neither offense is necessarily included in the other, even though under section 654 he or she could not be punished for more than one offense arising from the single act or indivisible course of conduct." (*People v. Ortega* (1998) 19 Cal.4th 686, 693 [80 Cal.Rptr.2d 489, 968 P.2d 48].)

under the accusatory pleading test. The appropriate yardstick is the elements test based on statutory comparison of the crimes. (See *United States v. Dixon* (1993) 509 U.S. 688, 703-712 [113 S.Ct. 2849, 2859-2864, 125 L.Ed.2d 556]; *People v. Scheidt* (1991) 231 Cal.App.3d 162, 165-166, 170 [282 Cal.Rptr. 228].) ▉ This follows because the accusatory pleading test has nothing to do with double jeopardy principles or section 1023, each of which applies when "a given crime, by definition, *necessarily and at all times is included within another one.*" (*People v. Kehoe* (1949) 33 Cal.2d 711, 713 [204 P.2d 321], italics added.) The accusatory pleading test, which unavoidably is fact specific, cannot be the benchmark that a crime in the abstract will necessarily and always be included within another one for purposes of double jeopardy.

What Scott fails to recognize is that the broader accusatory pleading test, which is primarily concerned with issues of notice, has limited applications. For example, the accusatory pleading test is used in determining whether it is proper to give jury instructions on lesser offenses. (*People v. Geiger* (1984) 35 Cal.3d 510, 517, fn. 4 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], overruled on another ground in *People v. Birks* (1998) 19 Cal.4th 108, 112 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) Use of the accusatory pleading test also is appropriate in the context of section 1159, which authorizes finding a defendant guilty of a lesser included offense. (*People v. Marshall, supra,* 48 Cal.2d at p. 405.) (See fn. 5, *ante.*)

▉ The key term in the double jeopardy context is "necessarily included." As the Court of Appeal in *People v. Scheidt, supra,* 231 Cal.App.3d at pages 165 to 166, put it: "[A] statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding. An offense that *may be* a lesser included offense because of the specific nature of the accusatory pleading is not subject to the same bar." (Italics added.)

Thus, " '[*f*]*actual* inextricability does *not* equal "necessarily included." ' [Citation.]" (*People v. Ortega, supra,* 19 Cal.4th at pp. 697-698, italics in original.) "Some cases suggest mistaken views that an offense may be 'necessarily included' in another offense . . . because the evidence proves a 'lesser' offense . . . ." (*People v. Marshall, supra,* 48 Cal.2d at p. 405.)

In sum, neither the constitutional prohibition against being twice placed in jeopardy nor the statutory bar of section 1023 applies because in this context Scott's nonforcible sex offenses were not necessarily included in his forcible

sex offenses.[7] Trial counsel therefore could not have been ineffective for failing to raise the issue below.

## II. *No Error in Failing to Instruct on Reasonable Belief as to Victim's Age*

Scott contends the trial court committed prejudicial error when it refused to instruct that his reasonable belief Kristina was 16 years old was a defense to the nonforcible sex crimes. The contention is without merit.

Essentially, Scott is arguing that he was entitled to such an instruction under *People v. Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], in which our Supreme Court held a good faith and reasonable belief that a victim was over the age of consent and had voluntarily engaged in sexual intercourse was a defense to statutory rape.[8]

We conclude that the *Hernandez* defense does not apply here. Rather, as we shall explain, we find the teachings of *People v. Olsen* (1984) 36 Cal.3d 638 [205 Cal.Rptr. 492, 685 P.2d 52] are controlling, and the trial court correctly refused to give the instruction.

### The Hernandez and Olsen Decisions

In *People v. Hernandez, supra,* 61 Cal.2d 529, the defendant was charged with statutory rape of a girl who was 17 years and 9 months old, and

---

[7]The dissent's reliance on *People v. Fields, supra,* 13 Cal.4th 289, is misplaced because that case did involve a conviction on a necessarily included lesser offense. (*Id.* at p. 300, fn. 2.)

[8]When *Hernandez* was decided, statutory rape was defined in former section 261, subdivision 1, as an act of sexual intercourse accomplished with a female not the wife of the perpetrator where the female was under the age of 18 years. (Stats. 1913, ch. 122, § 1, p. 212.) A 1970 amendment recodified subdivision 1 as section 261.5 (unlawful sexual intercourse). (Stats. 1970, ch. 1301, §§ 1 & 2, pp. 2405-2406.) As originally enacted, section 261.5 read: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." (Stats. 1970, ch. 1301, § 2, p. 2406.)

In 1993, the Legislature amended section 261.5 to read: "(a) Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 years. [¶] (b) Any person who engages in an act of unlawful sexual intercourse with a minor who is not more than three years older or three years younger than the perpetrator, is guilty of a misdemeanor. [¶] (c) Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison. [¶] (d) Any person over the age of 21 years who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison for two, three, or four years." (Stats. 1993, ch. 596, § 1, pp. 3139-3140.) Subsequent amendments to section 261.5 in 1996 and 1998 did not substantively change the statute with respect to the issues raised in this appeal.

the trial court refused to allow the defendant to present evidence of his good faith, reasonable belief that the girl was 18 or over. Overruling established precedent such as *People v. Ratz* (1896) 115 Cal. 132 [46 P. 915], the high court in *Hernandez* held it was reversible error to exclude such evidence, finding that a reasonable mistake of fact as to age can eliminate the requisite criminal intent. (*People v. Hernandez, supra,* 61 Cal.2d at pp. 534-536.)

"We are persuaded that the reluctance to accord to a charge of statutory rape the defense of a lack of criminal intent has no greater justification than in the case of other statutory crimes [such as bigamy], where the Legislature had made identical provision with respect to intent. ' "At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense . . . ." ' [Citations.] Our departure from the views expressed in *Ratz* is in no manner indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually naive female from exploitation. No responsible person would hesitate to condemn as untenable a claimed good faith belief in the age of consent of an 'infant' female whose obviously tender years preclude the existence of reasonable grounds for that belief. However, the prosecutrix in the instant case was but three months short of 18 years of age and there is nothing in the record to indicate that the purposes of the law as stated in *Ratz* can be better served by foreclosing the defense of lack of intent. This is not to say that the granting to consent by even a sexually sophisticated girl known to be less than the statutory age is a defense. We hold only that, in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein a criminal intent is lacking." (*People v. Hernandez, supra,* 61 Cal.2d at pp. 535-536, fn. omitted.)

The high court rejected the accepted notion that one who has sexual relations with a young female does so at his peril, assuming the risk that his partner is under the age of consent: "[I]f [the perpetrator] participates in a mutual act of sexual intercourse, believing his partner to be beyond the age of consent, with reasonable grounds for such belief, where is his criminal intent? In such circumstances he has not consciously taken any risk. Instead he has subjectively eliminated the risk by satisfying himself on reasonable evidence that the crime cannot be committed. If it occurs that he has been misled, we cannot realistically conclude that for such reason alone the intent with which he undertook the act suddenly becomes more heinous." (*People v. Hernandez, supra,* 61 Cal.2d at p. 534.)[9] In *People v. Peterson* (1981) 126

---

[9]The Supreme Court's 1964 decision in *Hernandez* was the first in the country to hold a defendant's mistaken belief as to the age of a victim was a defense to a charge of statutory

Cal.App.3d 396, 397 [178 Cal.Rptr. 734], the Court of Appeal extended the *Hernandez* rule to oral copulation with a person under 18 years of age.

However, in *People v. Olsen, supra,* 36 Cal.3d at pages 642 to 649, the Supreme Court distinguished *Hernandez* and declined to apply a mistake of age defense to a charge of lewd or lascivious conduct with a child under the age of 14 years (§ 288, subd. (a)). "[O]ne who commits lewd or lascivious acts with a child, even with a good faith belief that the child is 14 years of age or older, does so at his or her peril." (*People v. Olsen, supra,* 36 Cal.3d at p. 649.)

The high court in *Olsen* noted that the *Hernandez* decision expressly said it was not withdrawing from the sound policy " 'that it is in the public interest to protect the sexually naive female from exploitation.' " (*People v. Olsen, supra,* 36 Cal.3d at p. 644.) Further, the *Olsen* court, relying on various Court of Appeal decisions,[10] noted that the younger the child victim is the less credible a defendant's claim of a mistaken belief that the victim is of the age of legal consent becomes. (*Olsen, supra,* 36 Cal.3d at pp. 646-647.) Moreover, stronger public policy considerations are implicated in protecting children under the age of 14 from sexual exploitation than those involved with unlawful sexual intercourse, and the law reflects this because typically more severe penalties are assigned to sex crimes involving children under the age of 14 than to statutory rape. (*Id.* at pp. 648-649.)

*Analysis*

■ As indicated above (see fn. 8, *ante*), what was known as statutory rape (former § 261, subd. 1) was recodified in 1970 and is now known as unlawful sexual intercourse (§ 261.5). Until a 1993 amendment, there were no gradations of the offense; now, however, the statute distinguishes between the relative ages of the perpetrator and the victim, assigning misdemeanor status to the offense when the ages of the perpetrator and victim are within a three-year range (i.e., teenagers) and felony status to other situations. (See fn. 8, *ante*.) The most severe punishment attaches to the offense

rape or sex crimes involving minors. (Annot., Mistake or Lack of Information as to Victim's Age as Defense to Statutory Rape (1997) 46 A.L.R.5th 499.) Most jurisdictions that have considered the issue have declined to follow *Hernandez*; however, the Model Penal Code section 213.6, subdivision (1) allows a defense of reasonable mistake as to age and various states have some version of the defense by statute. (46 A.L.R.5th at p. 509.) The majority rule in the United States remains that a defendant's knowledge of the age of a victim is not an essential element of statutory rape. (46 A.L.R.5th at p. 508.)

[10]See *People v. Gutierrez* (1978) 80 Cal.App.3d 829, 833-836 [145 Cal.Rptr. 823]; *People v. Toliver* (1969) 270 Cal.App.2d 492, 494-496 [75 Cal.Rptr. 819]; *People v. Tober* (1966) 241 Cal.App.2d 66, 72-73 [50 Cal.Rptr. 228].

when the perpetrator is an adult and the minor is under the age of 16 years. (See fn. 8, *ante.*)[11]

In *Hernandez,* the court was concerned with the effect of the mistake of fact on a defendant's intent in a situation where if there was no mistake— that is, the facts were as the defendant believed them to be—then he would not have committed the crime. Specifically, Hernandez believed the prosecutrix was 18 years old when in fact she was three months shy of the age of legal consent, and therefore, he committed the offense of statutory rape. If, however, the prosecutrix had been 18 years old as Hernandez believed, his conduct would not have been criminal. " ' "At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense . . . ." ' " (*People v. Hernandez, supra,* 61 Cal.2d at p. 535.)

Thus, Hernandez's good faith, reasonable mistake was a valid defense under section 26, which provides in pertinent part: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Three—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent . . . ."

But that is not this case.

Scott very well may have been operating under the mistaken belief that Kristina was 16 rather than 14 years old, but even if there were no mistake of fact he still would have been guilty of a crime, which he had intended to commit. In other words, even if Kristina had been 16, Scott would still be guilty of felony unlawful sexual intercourse (§ 261.5, subd. (c)). Scott is not deserving of the *Hernandez* defense of mistake of fact under section 26 because he intended to commit a crime. "[A] mistake of fact will disprove a criminal charge if the mistaken belief is . . . honestly entertained . . . based upon reasonable grounds and . . . of such a nature that *the conduct would have been lawful and proper* had the facts been as they were reasonably supposed to be." (Perkins & Boyce, Criminal Law (3d ed. 1982) Ignorance or Mistake of Fact, § 1, p. 1045, italics added.)

---

[11]Similarly, section 288a provides for different punishments for the offense of oral copulation based on the age of the minor victim. Under section 288a, subdivision (b)(1), the offense is punishable by imprisonment in the state prison, or in the county jail for a period of not more than one year when the victim is under age 18. Under section 288a, subdivision (b)(2), when the perpetrator is over 21 years of age and the victim is under 16 years of age, the offense is punishable by imprisonment in the state prison for 16 months, two years, or three years (See also § 18.) Under section 288a, subdivision (c), the offense carries a punishment of three, six, or eight years in prison when the victim is under 14 and the perpetrator is more than 10 years older than the victim.

■ This age-old rule reflects the evolution of our criminal jurisprudence and the central concept that every crime consists of two parts: the actus reus or guilty act; and the mens rea or guilty mind—the mental state attendant to the prohibited deed. "Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil." (*Morissette v. United States* (1952) 342 U.S. 246, 251-252 [72 S.Ct. 240, 244, 96 L.Ed. 288].)

"[J]udges, in the development of the mens-rea doctrine, spoke in terms of the guilty mind (*nisi mens sit rea*) . . . . [T]he mind [w]as either innocent or guilty . . . . One who was intending to commit a crime did not have an innocent mind. Hence he was acting with mens rea and if he committed the actus reus of some unintended crime he was guilty of that crime unless it required a specific intent or some other special mental element. As he was acting with mens rea it was unimportant that the mistake he made was based upon reasonable grounds. The courts also held that the mind was not innocent if the actor was intending to commit a very wrongful act, even if no punishment was provided for that act, and hence he was acting with mens rea and might be guilty of an unintended crime." (Perkins & Boyce, Criminal Law, *supra*, Ignorance or Mistake of Fact, § 1, p. 1049, some italics omitted.)

■ Further, "a mistake of fact relating only to the gravity of an offense will not shield a deliberate offender from the full consequences of the wrong actually committed." (*People v. Lopez* (1969) 271 Cal.App.2d 754, 760-761 [77 Cal.Rptr. 59], quoted with approval in *People v. Olsen, supra*, 36 Cal.3d at p. 644.)

In sum, whether Scott reasonably and in good faith believed Kristina was 16 years old rather than 14 is of no import; it was not a potential defense. Scott was not entitled to a mistake of fact instruction. There was no error.

III.-V.*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Affirmed.

Huffman, Acting P. J., concurred.

*See footnote 1, *ante*, page 784.

**McDONALD, J.,** Concurring and Dissenting.—I agree with part II of the majority opinion that under the facts of this case the trial court correctly refused to instruct that Scott's reasonable belief Kristina was 16 years old established a defense to the nonforcible sex crimes. (Counts 2, 4 and 6—Pen. Code, §§ 261.5, subd. (d) and 288a, subd. (b)(2).)[1] I also agree with parts III and IV that the trial court correctly instructed with CALJIC No. 17.41.1 and found true the prior serious or violent felony conviction allegation. However, I do not agree with part I (lesser included offense analysis) and as a result I also do not agree with part V (limitation on credits).

In part I the majority concludes that the count 2 offense (unlawful intercourse with a minor under 16 years of age) is not a lesser included offense to the count 1 offense (forcible rape), and the counts 4 and 6 offenses (oral copulation by a person over 21 years of age with a minor under 16 years of age) are not lesser included offenses to the counts 3 and 5 offenses (forcible oral copulation), respectively. Were the majority comfortable with this conclusion, part I would have ended at that point; no further discussion of Scott's argument that section 1023 barred retrial of counts 1, 3 and 5 was necessary. However, part I continues with a discussion that concludes double jeopardy and section 1023 would prohibit retrial of the forcible sex offenses (counts 1, 3 and 5) if the nonforcible sex offenses (counts 2, 4 and 6) were lesser included offenses of the forcible sex offenses under the elements test but not if they were lesser included offenses under only the accusatory pleading test. In my opinion counts 2, 4 and 6 are lesser included offenses to counts 1, 3 and 5, respectively, under the accusatory pleading test, and section 1023 as applied in *People v. Fields* (1996) 13 Cal.4th 289 [52 Cal.Rptr.2d 282, 914 P.2d 832] (*Fields*), bars retrial of the greater offenses.

The California Supreme Court recently summarized the principles of lesser included offenses in *People v. Lopez* (1998) 19 Cal.4th 282 [79 Cal.Rptr.2d 195, 965 P.2d 713]. In *Lopez,* the court stated at pages 288 and 289:

"To determine whether a lesser offense is necessarily included in the charged offense, one of two tests (called the 'elements' test and the 'accusatory pleading' test) must be met. The elements test is satisfied when '"all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." [Citation.]' . . .

"Under the accusatory pleading test, a lesser offense is included within the greater charged offense ' "if the charging allegations of the accusatory

---

[1]All statutory references are to the Penal Code.

pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' [Citations.]" If either test is met the lesser included offense is *necessarily* included in the charged offense. (19 Cal.4th at p. 288.)

In this case the charging allegations of counts 1 and 2, considered together, describe the offense as follows: On or about September 5, 1996, Scott, a person over 21 years, did unlawfully have and accomplish an act of sexual intercourse with Kristina, a minor under 16 years of age not his spouse, against said person's will, by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury in violation of section 261, subdivision (a)(2). As so charged, if section 261, subdivision (a)(2) is committed, the lesser offense of section 261.5, subdivision (d) is necessarily committed.

The charging allegations of counts 3 and 4, considered together, describe the offense as follows: On or about September 5, 1996, Scott, being over 21 years of age, did unlawfully accomplish an act of oral copulation with Kristina, a person under the age of 16, which act was accomplished against the victim's will by means of force, violence, duress, menace and feat or immediate and unlawful bodily injury in violation of section 288a, subdivision (c). As so charged, if section 288a, subdivision (c) is committed, the lesser offense of section 288a, subdivision (b)(2) is necessarily committed. Counts 3 and 4 are described in the charging allegation as the "first instance" to distinguish the charge from counts 5 and 6, which are described as the "second instance."

Similarly, the charging allegations of counts 5 and 6, considered together, describe the offense as follows: On or about September 5, 1996, Scott, being over 21 years of age, did unlawfully accomplish an act of oral copulation with Kristina, a person under the age of 16, which act was accomplished against the victim's will by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury in violation of section 288a, subdivision (c). As so charged, if section 288a, subdivision (c) is committed, the lesser offense of section 288a, subdivision (b)(2) is necessarily committed.

Therefore, under the accusatory pleading test set forth in *Lopez,* as charged count 2 is a lesser included offense to count 1, count 4 is a lesser included offense to count 3, and count 6 is a lesser included offense to count 5. The majority disagrees with my view because the offenses were pleaded in different counts (maj. opn., *ante,* at pp. 795-796). However, if merely pleading in separate counts avoided the issue of lesser included offenses

determined under the accusatory pleading test, there would be no accusatory pleading test; the test could always be avoided by merely using multiple counts for the same offense. (See *People v. Rush* (1993) 16 Cal.App.4th 20 [20 Cal.Rptr.2d 15] [lesser included offenses found in separate counts under the accusatory pleading test].) The majority also refers to *People v. Ortega* (1998) 19 Cal.4th 686, 693 [80 Cal.Rptr.2d 489, 968 P.2d 48] for the proposition that a person may be convicted of multiple offenses arising from a single act or individual course of conduct, although section 654 bars multiple punishment. (Maj. opn., *ante*, at p. 795, fn. 6.) However, the majority's quotation from *Ortega* includes the caveat that the proposition does not apply if one offense is a necessarily included offense to the other. Because here the nonforcible offenses are lesser included offenses to the forcible offenses, the majority's quote from *Ortega,* although correct, by its terms is inapplicable to this case.

The majority's analysis is based on two concepts; double jeopardy and a perceived distinction between elements lesser included offenses and accusatory pleading lesser included offenses. The majority's position assumes that under the accusatory pleading test, but not under the elements test, the nonforcible sex crimes are lesser included offenses to the forcible sex offenses. It then concludes that only elements test lesser included offenses may be considered in a double jeopardy analysis. The problem with the majority's position is that no one, other than the majority, contends the bar to retrial of the forcible sex offenses is based on double jeopardy principles. Therefore, even if the majority's perceived distinction between elements test and accusatory pleading test lesser included offenses is correct, it is not relevant to this case.

First, the majority opinion characterizes Scott's appellate contention to be that his convictions of the nonforcible sex offenses were implicit acquittals of the forcible sex offenses because the former were lesser included offenses of the latter and as a result retrial of the forcible sex offenses was barred by double jeopardy principles. (Maj. opn., *ante*, at pp. 793-794.) The majority opinion has mischaracterized Scott's position. Scott does not argue that double jeopardy bars retrial of the forcible sex offenses; *Fields* rejected the double jeopardy argument. (*Fields; supra,* 13 Cal.4th at p. 303 ["We thus conclude that under the double jeopardy principles embodied in the California Constitution [and the Fifth Amendment of the United States Constitution], when jurors deadlock on a greater offense, an acquittal on that charge will not be implied by the jury's verdict of guilty on a lesser included offense"].) Rather, Scott's appellate argument is based on the holding in *Fields* that "pursuant to section 1023 and [*People v. Greer* (1947) 30 Cal.2d 589 [184 P.2d 512]], the conviction of the lesser offense in the first trial

operated to bar the retrial of defendant on the greater offense, regardless of the first jury's deadlock on the greater offense." (*Id.* at p. 307.)

The *Fields* decision was not based on double jeopardy principles but rather on the following considerations:

1. "[O]nce a conviction on the lesser offense has been obtained, ' "to [later] convict of the greater would be to convict twice of the lesser." ' " (*Fields, supra,* 13 Cal.4th at p. 306.)

2. A contrary rule would vitiate section 1023 by permitting the prosecution to start with " 'prosecution of the lesser offense and proceeding up the scale.' " (*Fields, supra,* 13 Cal.4th at p. 307.)

3. Problems of application of a contrary rule, including instructions to the jury in the second trial. (*Fields, supra,* 13 Cal.4th at p. 307, fn. 5.)

4. Consistency with "[t]he acquittal-first rule, requiring the jury to expressly acquit the defendant before rendering a verdict on the lesser offense" (*Fields, supra,* 13 Cal.4th at p. 309), as set forth in *People v. Kurtzman* (1988) 46 Cal.3d 322, 334 [250 Cal.Rptr. 244, 758 P.2d 572].

To avoid the problem presented in *Fields* and in this case, the Supreme Court in *Fields, supra,* 13 Cal.4th 289, set forth detailed rules addressed to trial courts and prosecutors. The court stated at pages 310 and 311:

"As our opinion today makes clear, under *Kurtzman,* when the jury returns a verdict on the lesser included offense, it must also render a corresponding verdict of acquittal on the greater offense. If a verdict of guilty on the lesser offense is recorded and the jury discharged without having rendered any verdict on the greater offense, a retrial on the greater offense is barred under section 1023, regardless of whether the jury expressly deadlocked on that charge. We recognize, however, that there may be instances such as occurred here in which, contrary to the rule of *Kurtzman,* the jury renders only a verdict of guilty on the lesser included offense. If this occurs, the trial court may properly decline to receive and record this verdict of conviction pending further deliberations by the jury. More specifically, prior to discharging the jury, the trial court has the authority pursuant to section 1161 to direct the jury to reconsider its lone verdict of conviction on the lesser included offense in light of *Kurtzman* and the acquittal-first rule. [Citation.] By making use of such a procedure, the trial court can prevent the unintended consequences flowing from the jury's mistake in returning a verdict of guilty on the lesser included offense while deadlocking on the greater offense.

"Section 1161 provides in pertinent part: 'When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the

law, the court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if[,] after the reconsideration, they return the same verdict, it must be entered. . . .' If, contrary to *Kurtzman,* the jury renders only a verdict of conviction on the lesser included offense, without a corresponding verdict of acquittal on the greater offense, its verdict of conviction is incomplete 'under the law and the instructions.' [Citations.] Under these circumstances, the trial court is permitted, pursuant to section 1161, to direct the jury to reconsider its verdict of conviction in light of the acquittal-first rule.

"Prior to the discharge of the jury, during which time the trial court is empowered to direct the jury to reconsider a lone verdict of conviction on the lesser included offense in light of *Kurtzman,* the incomplete verdict of conviction rendered by a jury 'mistaken in the law' does not implicate a defendant's double jeopardy interest in avoiding retrial on the greater offense. [Citations.] By contrast, if the jury renders an incomplete verdict of conviction on the lesser included offense, and the rendered verdict is received by the court and recorded, and the jury is discharged, the trial court no longer has jurisdiction to direct jurors to reconsider their irregular verdict. [Citations.] Under such a scenario, the consequence of the 'mistake in the law' should be borne by the People, rather than the defendant. Thus, once the jury is discharged after rendering a verdict of guilty on the lesser included offense, without a corresponding verdict of acquittal on the greater offense, the defendant stands convicted of the lesser included offense, and retrial on the greater offense is barred notwithstanding the jury's deadlock on that charge. (§ 1023.)

"Placing the onus on the People to bring an incomplete verdict of conviction to the trial court's attention prior to jury discharge is appropriate because it preserves the possibility that, after reconsideration pursuant to section 1161, the jury will decline to return the requisite verdict of acquittal of the greater offense. Should this occur, the incomplete verdict of conviction on the lesser included offense initially rendered by the jury is of no effect, and the prosecutor may move the trial court to declare a mistrial, discharge the jury, and set the entire matter for retrial. [Citations.] Alternatively, when faced with a deadlock on the greater offense and a verdict of guilty on the lesser included offense, the People may prefer to forgo the opportunity to convict the accused of the greater offense on retrial in favor of obtaining a present conviction on the lesser included offense. [Citation.] In that case, the People should move the trial court to exercise its discretion to dismiss the charge on the greater offense in furtherance of justice under section 1385."

Neither the language nor the rationale of *Fields* distinguishes between elements test and accusatory pleading test lesser included offenses for purposes of the retrial bar of section 1023.

Second, the majority seems to adopt the view that a lesser included offense so determined under the accusatory pleading test is not a "necessarily" lesser included offense and therefore has limited application. For example, the majority opinion does not express disagreement with the Supreme Court in *Fields,* it merely concludes that *Fields* does not apply if the lesser included offense is so designated under the accusatory pleading test rather than under the elements test because under the former it is not a *necessarily* lesser included offense. I find no rationale for this distinction. Certainly there is no reference to that distinction in *Fields,* which does not use the term "necessarily included offense," and the rationale of *Fields* applies as much to accusatory pleading test lesser included offenses as to element test lesser included offenses. Furthermore, *Lopez* defined accusatory pleading lesser included offenses as necessarily lesser included offenses.

The majority acknowledges that for purposes of jury instructions, a lesser included offense under the accusatory pleading test is the equivalent of a lesser included offense under the elements test. If the trial court must instruct on the lesser included offense, then the appropriate instruction concludes: "However, the court cannot accept a guilty verdict on a lesser crime unless you have unanimously found the defendant not guilty of the . . . greater crime." (CALJIC No. 17.10.) This instruction is consistent with *Fields* and makes no distinction between elements test lesser included offenses and accusatory pleading lesser included offenses. Therefore, in this case, the trial court erred by accepting guilty verdicts on the nonforcible sex offenses (lesser included offenses) without requiring a verdict of acquittal on the forcible sex offenses (greater offenses). Under these circumstances, the jury has returned an irregular verdict and if the court, as here, releases the jury, "the defendant stands convicted of the lesser included offense, and retrial on the greater offense is barred notwithstanding the jury's deadlock on that charge. (§ 1023.)" (*Fields, supra,* 13 Cal.4th at p. 311.)

Although the majority opinion acknowledges that instructions on the lesser included offense determined under the accusatory pleading test must be given (maj. opn., *ante,* at pp. 795-796), it ignores the ramifications of the instruction requirement set forth in *Fields.* It also acknowledges that offenses determined to be lesser included offenses under the accusatory pleading test are subject to the provisions of section 1159. By its terms, section 1159 is applicable to "necessarily included" lesser offenses. If section 1159 is applicable to accusatory pleading lesser included offenses, then those offenses are by definition "necessarily" lesser included offenses. (But see *People v. Scheidt* (1991) 231 Cal.App.3d 162, 167-168 [282 Cal.Rptr. 228].)

In my opinion the *Fields* decision is binding on this court and dispositive of the issue of whether the forcible sex offenses on which the jury in Scott's

first trial could not reach a verdict can be retried following Scott's convictions on the lesser included nonforcible sex offenses. Based on the authority of *Fields,* I conclude that the trial court was without jurisdiction to retry Scott on the alleged forcible sex offenses.

The People argue that even were Scott's retrial barred, there was no objection in the trial court and this contention may not be raised for the first time on appeal. I note, however, that there is no reference in *Fields* to the requirement of raising the bar first in the trial court, although that is clearly the best procedure. In any event, if the issue must be raised first in the trial court and was not, Scott received ineffective assistance of counsel by his trial counsel not raising the issue. Furthermore, the ineffective assistance of counsel was prejudicial because it resulted in three convictions that under *Fields* were barred from retrial.

I would reverse Scott's convictions for the three forcible sex offenses (counts 1, 3 and 5) and remand the matter to the trial court for resentencing and reconsideration of the credit limitation issue.

Appellant's petition for review by the Supreme Court was denied January 10, 2001.