Filed 6/4/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re LIONEL A. SCOTT<br><br>on<br><br>Habeas Corpus. | D076909<br><br>(San Diego County<br>Super. Ct. No. SCD137581) |

ORIGINAL PROCEEDING in habeas corpus. Petition denied.

Steven Schorr, by appointment of the Court of Appeal, for petitioner.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Meredith S. White, Deputy Attorneys General, for respondent.

In 1984, petitioner Lionel Scott pleaded guilty to third degree assault in Minnesota (Minn. Stat. Ann. § 609.223, subd. (1) ["assault[] . . . inflict[ing] substantial bodily harm"]), and admitted during his plea colloquy that he personally and intentionally pressed a warm or hot iron against his victim's face, inflicting a discernible burn mark that required medical treatment and was still somewhat visible four months later.

In 1999, Scott was convicted in California of several sex offenses. The sentencing court imposed a Three Strikes law sentence of 75 years to life based, in part, on the court's finding that Scott's earlier Minnesota conviction constituted a "serious felony" (and therefore a "strike") because Scott "personally used a deadly or dangerous weapon"

(the iron) in the commission of the offense. (Pen. Code, § 1192.7, subd. (c)(23); further undesignated statutory references are to the Penal Code.) In making this finding, the trial court relied solely on the elements of the Minnesota offense and the plea colloquy establishing the factual basis for Scott's guilty plea.

In 2019, Scott filed a petition for writ of habeas corpus in the California Supreme Court arguing he was entitled to relief under that court's recent decision in *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), which held that a sentencing "court considering whether to impose an increased sentence based on a prior qualifying conviction may not"—consistent with a defendant's Sixth Amendment right to a jury trial—"make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' " (*Gallardo*, at p. 136.) Instead, "[t]he court's role is . . . limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Ibid*.) The Supreme Court issued an order to show cause, returnable to our court, directing the Department of Corrections and Rehabilitation to show cause "why [Scott] is not entitled to relief pursuant to [*Gallardo*], and why *Gallardo* should not apply retroactively on habeas corpus to final judgments of conviction."

The Courts of Appeal that have thus far considered *Gallardo*'s retroactivity are split on the issue and the question is pending before the California Supreme Court. (See *In re Milton* (2019) 42 Cal.App.5th 977, 988-999 [holding *Gallardo* is *not* retroactive], review granted March 11, 2020, S259954 (*Milton*); *In re Brown* (2020) 45 Cal.App.5th

2

699, 716 [holding, with one dissent, that *Gallardo is* retroactive], petn. for review pending, petn. filed April 28, 2020, S261454 (*Brown*).)  For reasons we will explain, pending further guidance from the Supreme Court, we are persuaded by the *Milton* court's reasoning and conclusion that *Gallardo* does not apply retroactively. Additionally, even were we to reach a contrary conclusion, we would conclude Scott is not entitled to relief under *Gallardo* because the sentencing court based its findings regarding Scott's Minnesota conviction on undisputed facts "admitted by [Scott] in entering [his] guilty plea" (*Gallardo*, *supra*, 4 Cal.5th at p. 124), a practice expressly permitted by *Gallardo*.  Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Scott's Current Convictions and the Court's Strike Findings*

In 1999, a jury convicted Scott of six counts of sex offenses against a minor.  The trial court then found true the prosecution's allegations that Scott had suffered two foreign convictions that constituted strikes under California's Three Strikes law—a conviction in Missouri for residential burglary, and a conviction in Minnesota for third degree assault. Only the finding regarding the Minnesota conviction is at issue here.

The prosecutor argued the Minnesota conviction qualified as a strike under section 1192.7, subdivision (c)(23), which includes within its definition "any felony in which the defendant personally used a dangerous or deadly weapon."  At the sentencing hearing, the court examined the change-of-plea packet and reporter's transcript from the Minnesota plea hearing.

3

According to the Minnesota court records, Scott pleaded guilty in 1984 to third degree assault, defined as follows: "Whoever assaults another and inflicts substantial bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both." (Minn. Stat. Ann. § 609.223, subd. (1).) During the Minnesota plea hearing, Scott's attorney questioned him as follows about the factual basis for his guilty plea:[1]

> "Q. Mr. Scott, the complaint alleges that on July 23rd, 1984 in the early morning hours you were in the apartment of your sister, [Sister], . . . is that correct?
>
> "A. Yes.
>
> "Q. And it also alleges that on that occasion the two of you got into an argument, is that correct?
>
> "A. Yes.
>
> "Q. And that as a result of the argument, a scuffle occurred, is that correct?
>
> "A. Yes.
>
> "Q. And that the two of you were involved in the scuffle and that while that scuffle occurred, you placed an iron which was apparently in the room and which was warm or hot on the face of [Sister], is that correct?
>
> "A. Yes.
>
> "Q. And that as a result of that, [Sister] did suffer a burn on her face?
>
> "A. Yes.

---

[1]    In Minnesota, "[t]he factual basis [for a guilty plea] is ordinarily established by the court's or counsels' questioning of the defendant so he explains, in his own words, the events surrounding the crime." (*Barnslater v. State* (Minn.Ct.App. 2011) 805 N.W.2d 910, 914.)

"Q. For which she was treated at the hospital.

"A. Right.

"Q. And you have seen [Sister] since that time, have you not?

"A. Yes.

"Q. And from your observation, whatever injury she sustained on that occasion [has] essentially healed, is that correct?

"A. Yes.

"Q. And any mark that was left as a result of the incident is quite unnoticeable from your observation?

"A. Yes.

"Q. But you agree that on that occasion you did assault her with the iron intentionally?

"A. Yes."

The prosecutor then questioned Scott as follows:

"[Prosecutor]: Just to clarify. When we are talking about an iron, we are talking about a steam iron, the kind of thing you would iron clothing with?

"[Scott]: Yes.

"[Prosecutor]: And at the time that iron was applied to her face, it caused a fairly discernable burn, did it not, from her left ear down her cheek bone?

"[Scott]: Yes.

"[Prosecutor]: And you are saying that now that burn, for all intents and purposes, cannot be seen? [¶] . . . [¶]

"[Scott]: You can still see it, it's a small burn left on her cheek.

"[Prosecutor]: But it is nothing like it was right after the—

"[Scott]: No.

5

"[Prosecutor]: So you would agree that what was caused there was a substantial injury to her but a temporary one at the same time?

"[Scott]: Yes."

On this basis, Scott admitted the elements of the offense and pleaded guilty:

"Q. And you understand that the crime you are pleading guilty to is Third Degree Assault . . . ?

"A. Yes.

"Q. And that is defined as whoever assaults another and inflicts substantial bodily harm, that that is the essential elements of Assault in the Third Degree?

"A. Yes."

After reviewing these records regarding Scott's Minnesota guilty plea, the trial court concluded Scott had admitted to personally using a dangerous weapon in the commission of the Minnesota assault:

"So I think that establishes a scenario where we have the defendant using an iron and the way he used it caused a serious injury, and the way he used it makes it a deadly or dangerous weapon under California law and therefore it appears to this court that the prior . . . does qualify since the defendant, based on the evidence, . . . in fact personally used a deadly or dangerous weapon when he placed a hot steam iron against the victim's face which did cause an injury. And the law does say that . . . the way that he uses the object can make it a deadly or dangerous weapon."

Based on its finding that Scott's Missouri and Minnesota convictions qualified as strikes, the trial court sentenced him to a third-strike sentence of 75 years to life on the sex offenses.

6

*Appellate and Habeas Proceedings*

In 2000, we upheld Scott's convictions in consolidated direct appeals in which he challenged, among other things, the trial court's "finding that [the] prior felony conviction in Minnesota constituted a strike under the 'Three Strikes' law." (*People v. Scott* (2000) 83 Cal.App.4th 784, 789, 801.) In the nonpublished portion of our opinion, we held "there was substantial evidence to support the trial court's finding that Scott used the iron as a dangerous or deadly weapon." (*People v. Scott* (Sept. 12, 2000, D033131 [nonpub. opn.].) The California Supreme Court denied Scott's petition for review.

In 2018, the year after the *Gallardo* decision was filed, Scott filed a petition for writ of habeas corpus in superior court arguing the sentencing court engaged in improper factfinding in violation of *Gallardo*. The court denied Scott's petition as procedurally barred and lacking substantive merit.

Scott then raised the same challenge via writ petition to our court. We denied the petition, explaining it was "procedurally barred because his attack on the use of the Minnesota . . . conviction as a strike was already decided adversely to him on appeal." (See *In re Reno* (2012) 55 Cal.4th 428, 476 ["[L]egal claims that have previously been raised and rejected on direct appeal ordinarily cannot be reraised in a collateral attack by filing a petition for a writ of habeas corpus."].) We further explained that because the sentencing court had based its strike finding on Scott's admissions during his Minnesota change-of-plea hearing—a practice expressly approved by *Gallardo*—*Gallardo* did "not constitute a change in law that would allow Scott to avoid the procedural bar to his petition."

7

Scott then raised the same challenge via writ petition to the California Supreme Court. After requesting and receiving an informal response, the Supreme Court issued an order to show cause to the Department of Corrections and Rehabilitation, returnable to our court, explaining "why petitioner is not entitled to relief pursuant to [*Gallardo*], and why *Gallardo* should not apply retroactively on habeas corpus to final judgments of conviction." The Attorney General filed a return, and Scott filed a traverse.

DISCUSSION

I. *The* Gallardo *Decision*

We begin by discussing *Gallardo* and the authorities that led to that decision.

When the trial court sentenced Scott in 1999, California law permitted trial courts to examine "the entire record" of a prior foreign conviction "to determine the substance of" that conviction for sentence enhancement purposes. (*People v. Guerrero* (1988) 44 Cal.3d 343, 355; see *Milton*, *supra*, 42 Cal.App.5th at p. 987, rev. granted.)

The following year, the United States Supreme Court held in *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) that a defendant is entitled to a jury trial not just on the "element[s] of the crime" (*id.* at p. 477), but also on "any fact that increases the penalty . . . beyond the prescribed statutory maximum" (*id.* at p. 490). The court clarified that this right does not apply to "the *fact* of a prior conviction" used to impose an added punishment. (*Id.* at p. 490, italics added.) Applying these principles, the *Apprendi* court concluded the defendant had been improperly denied a jury trial on the factual predicate of the enhancement allegation attached to his pending charges. (*Id.* at pp. 469-470.)

8

In *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), the California Supreme Court narrowly construed *Apprendi*'s extension of the right to a jury trial as being confined to the current charges and not to recidivism-based enhancements. (*McGee*, at pp. 696-697.) However, the *McGee* court clarified that a sentencing court's inquiry regarding the nature of a prior conviction "is a limited one"—it should begin with a "focus on the elements" of the prior offense, and, if that does not resolve the issue, proceed to a determination of whether the prior "conviction realistically may have been based on conduct that would not constitute a serious felony under California law." (*McGee*, at p. 706.) Applying these principles, the *McGee* court found no error in the sentencing court's examination of the victim's preliminary hearing testimony from the prior case to determine the nature of the prior conviction. (*Id.* at p. 689.) The *McGee* court recognized that the United States Supreme Court may eventually construe *Apprendi* more broadly. (*McGee*, at p. 686.)

As anticipated, less than a decade later, the United States Supreme Court, in construing a federal sentence enhancement statute (the Armed Career Criminal Act, or ACCA), extended the right to a jury trial to factual determinations about the *nature*—as distinguished from the *fact*—of a prior conviction being used to increase punishment. (See *Descamps v. United States* (2013) 570 U.S. 254 (*Descamps*); *Mathis v. United States* (2016) __ U.S. __, [136 S.Ct. 2243] (*Mathis*).) In *Descamps*, for example, the high court found that the federal district court had erred by using the ACCA to enhance the defendant's punishment based on a prior state burglary conviction where the state's burglary statute did not include an unlawful-entry element required by the ACCA to allow for enhancement. (*Descamps*, at pp. 258-259.) The district court had found the

9

unlawful-entry requirement satisfied by looking to the defendant's supposed admission during the state court sentencing hearing that he " 'broke and entered' " during the commission of the offense. (*Descamps*, at p. 270.) Based on federal ACCA precedent, Sixth Amendment principles, and fairness considerations, the *Descamps* court construed the ACCA as limiting a sentencing court's comparison of prior and current convictions to the elements of those offenses (the so-called "categorical approach"), except to the extent a limited inquiry into the record of the prior conviction is necessary to determine which statement of a divisible statute was violated (the so-called "modified categorical approach"). (*Descamps*, at pp. 267-270; *id.* at p. 257 [a "divisible" statute "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile"].) Accordingly, the Supreme Court concluded the district court erred by resolving a disputed fact unrelated to the elements of the prior offense. (*Id.* at pp. 277-278.)

In *Gallardo*, the California Supreme Court revisited *McGee* in light of *Descamps* and *Mathis*. The prosecution in *Gallardo* alleged the defendant's prior conviction for aggravated assault under former section 245, subdivision (a)(1)—a divisible statute[2]— qualified as a strike. (*Gallardo*, *supra*, 4 Cal.5th at p. 123.) Although the defendant had pleaded guilty to that offense, her plea did not specify whether she had used a deadly

_____

[2] Former section 245, subdivision (a)(1) was "divisible" because the same subdivision contained alternative statements of the same offense—assault with a deadly weapon (a strike), *or* assault by means of force likely to produce great bodily injury (not a strike). (See *Gallardo*, *supra*, 4 Cal.5th at p. 125, fn. 1.) Section 245 has since been amended to resolve this ambiguity. (*Gallardo*, at p. 125, fn. 1; see § 245, subds. (a)(1) [deadly weapon], (a)(4) [force likely].)

weapon or merely force likely to produce great bodily injury. (*Id.* at p. 136.) To resolve this ambiguity, the sentencing court's "sole basis . . . was a transcript from a preliminary hearing at which the victim testified that [the] defendant had used a knife . . . ." (*Ibid.*)

Although the sentencing court in *Gallardo* had complied with the procedure previously approved of by *McGee*, the high court in *Gallardo* concluded that procedure was no longer viable in light of *Descamps* and *Mathis*. (*Gallardo*, *supra*, 4 Cal.5th at pp. 132-137; *id.* at p. 134 [disapproving *McGee* "insofar as it authorizes trial courts to make findings about the conduct that 'realistically' gave rise to a defendant's prior conviction"].) Instead, *Gallardo* held the sentencing court's factfinding "role is . . . limited to identifying those facts that were established by virtue of the [prior] conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict [i.e., the elements of the offense] *or that the defendant admitted as the factual basis for a guilty plea*." (*Gallardo*, at p. 136, italics added.) Otherwise, the sentencing court improperly "invades the jury's province by . . . mak[ing] *disputed* findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' " (*Ibid.*, italics added, quoting *Descamps*, *supra*, 570 U.S. at p. 269.) " 'The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt.' " (*Gallardo*, at p. 124, quoting *Descamps*, at p. 269.)

The *Gallardo* court reaffirmed that once "the facts necessarily encompassed by the guilty verdict *or admitted by the defendant in pleading guilty to the prior crime*" are established, "questions about the proper characterization of [that] prior conviction are for

11

[the] court to resolve." (*Gallardo*, *supra*, 4 Cal.5th at p. 139, fn. 6, italics added; *id.* at p. 138 ["Our precedent instructs that determinations about the nature of prior convictions are to be made by the court, rather than a jury, based on the record of conviction."].)

Applying these principles, the *Gallardo* court concluded the trial court improperly relied on the prior victim's preliminary hearing testimony, which the defendant had not adopted as the factual basis for her plea. (*Gallardo*, *supra*, 4 Cal.5th at pp. 136, 139.) The Supreme Court remanded "to permit the People to demonstrate to the trial court, based on the record of the prior plea proceedings, that [the] defendant's guilty plea encompassed a relevant admission about the nature of her crime." (*Id.* at p. 139.)

## II. Gallardo *Does Not Apply Retroactively*

As noted, thus far the Courts of Appeal are divided on whether *Gallardo* applies retroactively, and the issue is pending in the California Supreme Court. (See *Milton*, *supra*, 42 Cal.App.5th at pp. 988-999 [holding *Gallardo* is *not* retroactive under either the federal or state standard], rev. granted; *Brown*, *supra*, 45 Cal.App.5th at p. 716 [holding, with one dissent, that *Gallardo is* retroactive under the state standard].) For reasons we will explain, pending further guidance from the Supreme Court, we are persuaded by the *Milton* court's reasoning and conclusion that *Gallardo* does not apply retroactively.

In general, only a new *substantive* rule can be applied retroactively; a new *procedural* rule "cannot be applied retroactively unless it qualifies under either the state or federal retroactivity standard." (*Brown*, *supra*, 45 Cal.App.5th at p. 717.) Significantly, both *Milton* and *Brown* agree on the threshold retroactivity issue that

12

*Gallardo* announced a new procedural rule. *Gallardo*'s rule is *new* because it disapproved of *McGee*, *supra*, 38 Cal.4th 682, and was not compelled by the earlier decision in *Apprendi* (as evidenced by the fact *McGee* distinguished *Apprendi*). (See *Milton*, *supra*, 42 Cal.App.5th at pp. 989, 997, rev. granted; *Brown*, at p. 716.)

And *Gallardo*'s rule is *procedural* because it merely imposed an evidentiary limitation on the materials a sentencing court may consider in determining whether a prior conviction qualifies as a strike. (*Milton*, *supra*, 42 Cal.App.5th at pp. 992-994, rev. granted; *id.* at p. 992 [" 'Procedural rules . . . "regulate only the *manner of determining* the defendant's culpability." ' "]; see *Brown*, *supra*, 45 Cal.App.5th at p. 717.) Stated conversely, *Gallardo*'s rule is not substantive because it does not " 'alter[] the range of conduct or the class of persons that the law punishes.' " (*Brown*, at p. 717; see *Milton*, at p. 992, *id.* at p. 993 [collecting cases holding that *Apprendi* stated a procedural rather than substantive rule]).[3]

Thus, because *Gallardo* announced only a new procedural rule, it "cannot be applied retroactively unless it qualifies under either the state or federal retroactivity standard." (*Brown*, *supra*, 45 Cal.App.5th at p. 717.)

---

[3]  In reaching its conclusion that *Gallardo* announced a new procedural rule, the *Milton* court found distinguishable the same cases Scott cites here. (See *Milton*, *supra*, 42 Cal.App.5th at pp. 993-994, rev. granted [distinguishing *Montgomery v. Louisiana* (2016) __ U.S. __, [136 S.Ct. 718] (holding that a sentencing scheme that mandates LWOP for juveniles convicted of murder applied retroactively) and *People v. Trujeque* (2015) 61 Cal.4th 227 (holding that a decision barring prosecution of a juvenile as an adult after the juvenile court has commenced adjudicatory proceedings applied retroactively)].) We find them distinguishable for the same reasons expressed in *Milton*.

A. *Federal Retroactivity Standard*

Under the federal test established in *Teague v. Lane* (1989) 489 U.S. 288, new procedural rules generally will apply retroactively only if they are " ' "watershed" ' " rules that " 'implicat[e] the fundamental fairness and accuracy of the criminal proceeding.' " (*Milton*, *supra*, 42 Cal.App.5th at p. 989, rev. granted.)  " 'In order to qualify as watershed, a new rule must meet two requirements.  First, the rule must be necessary to prevent "an ' "impermissibly large risk" ' " of an inaccurate conviction.  [Citations.] Second, the rule must "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." ' "  (*Id*. at p. 994.)  As the *Milton* court explained, *Gallardo* meets neither of these requirements.[4]

The *Milton* court observed that "*Gallardo*, though significant, was not a watershed rule of criminal procedure."  (*Milton*, *supra*, 42 Cal.App.5th at p. 994, rev. granted.) "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.' "  (*Schriro v. Summerlin* (2004) 542 U.S. 348, 352 (*Schriro*).)  The *Gallardo* court adopted its new procedural rule based on general Sixth Amendment principles, not some overarching concern that "a sentencing court's factfinding . . . was somehow inaccurate or unreliable."  (*Milton*, at p. 995.)  As the United States Supreme Court has recognized, "[t]he evidence is simply too equivocal to support [the] conclusion" that "judicial factfinding so '*seriously* diminishe[s]' accuracy that there is an ' "impermissibly

---

[4]      The *Brown* court did not analyze *Gallardo* under the federal retroactivity standard. (*Brown*, *supra*, 45 Cal.App.5th at pp. 715-716.)

14

large risk" ' of punishing conduct the law does not reach."  (*Schriro*, at pp. 355-356 [holding that an *Apprendi*-based invalidation of a state law authorizing trial courts to act as factfinders regarding death penalty special circumstance allegations did not apply retroactively].)

Nor did *Gallardo* establish a "bedrock procedural rule" because courts historically have set a very high bar for such status.  As the *Milton* court explained:  " 'In applying this requirement, we . . . have looked to the example of *Gideon* [*v. Wainwright* (1963) 372 U.S. 335] and "we have not hesitated to hold that less sweeping and fundamental rules" do not qualify.'  [Citations.]  Indeed, *Apprendi* and *Blakely* [*v. Washington* (2004) 542 U.S. 296] (an extension of *Apprendi*) did not announce 'bedrock' rules.  [Citations.]." (*Milton*, *supra*, 42 Cal.App.5th at p. 996, rev. granted; see *Schriro*, *supra*, 542 U.S. at p. 352 [the "class of [procedural] rules [given retroactive effect] is extremely narrow, and 'it is unlikely that any . . . "ha[s] yet to emerge" ' "].)

We find the *Milton* court's reasoning persuasive and, therefore, agree that *Gallardo* is not retroactive under the federal standard.

## B.  *California Retroactivity Standard*

We likewise find persuasive the *Milton* court's reasoning and conclusion that *Gallardo* is not retroactive under California's retroactivity standard, under which courts weigh " ' " 'the purpose to be served by the new standards" ' ' "—and, particularly, whether they are intended to vindicate a right essential to the reliability of the factfinding process—against " ' " 'the extent of the reliance by law enforcement authorities on the old standards, and . . . the effect on the administration of justice of a retroactive application of

15

the new standards.' " ' " (*Milton*, *supra*, 42 Cal.App.5th at p. 996, rev. granted, quoting *In re Johnson* (1970) 3 Cal.3d 404.)  The first factor is of utmost importance; the latter two " 'are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered.' " (*Milton*, at p. 996.)

As to the first factor, the *Milton* court again observed that the *Gallardo* court, in adopting its new procedural rule, "did not impugn the accuracy of factfinding by trial courts." (*Milton*, *supra*, 42 Cal.App.5th at p. 998, rev. granted, citing *Schriro*, *supra*, 542 U.S. at p. 356.)  Indeed, even the *Brown* court, which ultimately reached a contrary conclusion on retroactivity, "recognize[d] that the factfinding process might not be any less reliable if conducted by the sentencing judge, *and might even be better*." (*Brown*, *supra*, 45 Cal.App.5th at pp. 721-722, italics added.)  Because vindication of rights regarding accurate factfinding is the paramount concern of the state retroactivity standard, and because "[t]he evidence is simply too equivocal to support [the] conclusion" that "judicial factfinding so '*seriously* diminishe[s]' accuracy' " (*Schriro*, *supra*, 542 U.S. at pp. 355-356), we agree with the *Milton* court that the first retroactivity factor does not weigh strongly in favor of applying *Gallardo* retroactively.

On the other hand, the second and third factors weigh strongly against applying *Gallardo* retroactively.  As the *Milton* court observed, "at and after the time of [the defendant]'s sentencing [in 1999] California courts affirmed sentence enhancements based on factual findings by sentencing courts." (*Milton*, *supra*, 42 Cal.App.5th at p. 999, rev. granted; see *id.* at p. 985; see *Gallardo*, *supra*, 4 Cal.5th at p. 125 ["For some time, California cases have held that . . . determinations are to be made by the court,

16

rather than by the jury, based on a review of the record of the prior criminal proceeding."]; *Brown*, *supra*, 45 Cal.App.5th at p. 731 ["In the 11 years from *McGee* to *Gallardo*, California lawyers and lower courts universally and reasonably relied on *McGee*."] (dis. opn. of Menetrez, J.).) "Applying *Gallardo* retroactively would cause significant disruption by requiring courts to reopen countless cases, conduct new sentencing hearings, and locate records of proceedings conducted long ago . . . ." (*Milton*, at p. 999.) Indeed, even the *Brown* court "recognize[d] that applying *Gallardo* retroactively will be disruptive and burdensome to the courts." (*Brown*, at p. 722.)

At bottom, we do not view the rule in *Gallardo* as vindicating a right so essential to reliable factfinding that it outweighs the countervailing considerations of reliance and disruption to the judicial process. Accordingly, we agree with *Milton* that *Gallardo* does not apply retroactively under the state standard.

III. *Even If* Gallardo *Applied Retroactively, It Would Not Entitle Scott to Relief*

Even if we were to conclude that *Gallardo* applied retroactively, we would conclude it does not entitle Scott to relief. The *Gallardo* court held that judicial factfinding of *disputed* facts concerning a prior conviction on which a sentence enhancement is based violates a defendant's Sixth Amendment jury right. (*Gallardo*, *supra*, 4 Cal.5th at p. 136; *id.* at p. 138 [sentencing courts "cannot determine *disputed* facts about what conduct likely gave rise to the conviction" (italics added)].) Here, however, the sentencing court did not *find* any *disputed* facts; rather, the court merely considered the *undisputed* elements of the prior offense and the *admitted* factual basis for Scott's guilty plea. *Gallardo* allows this. (*Id.* at p. 136 [sentencing court may consider

17

facts "that the defendant admitted as the factual basis for a guilty plea"]; *id.* at p. 135 [Sixth Amendment jury right is violated only "when the sentencing court must rely on a finding regarding the defendant's conduct, but the jury did not necessarily make that finding (*or the defendant did not admit to that fact*)," (italics added)].)

Under the Three Strikes law, a prior conviction for a "strike" offense—a violent felony as defined in section 667.5, subdivision (c), or a serious felony as defined in section 1192.7, subdivision (c)—subjects a defendant to increased punishment. (§§ 1170.12, subd. (a), 667, subd. (b).) " ' "In order for a prior conviction from another jurisdiction to qualify as a strike under the Three Strikes law, it must involve the same conduct as would qualify as a strike in California." ' " (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12.) Here, the prosecution alleged Scott's Minnesota assault conviction constituted a strike under section 1192.7, subdivision (c)(23), which covers "any felony in which the defendant personally used a dangerous or deadly weapon."

In determining that Scott's Minnesota assault conviction qualified as a strike, the sentencing court relied solely on undisputed facts Scott admitted during his Minnesota guilty plea hearing. First, Scott's guilty plea established the elements of the offense—that he "assault[ed] another and inflict[ed] substantial bodily harm . . . ." (Minn. Stat. Ann. § 609.223.) Second, in establishing the factual basis for his guilty plea during the plea colloquy, Scott admitted that he personally and intentionally pressed a warm or hot iron against the victim's face, causing a discernible burn mark that was partially still visible four months later. He expressly admitted this constituted substantial bodily harm.

18

The sentencing court properly concluded that these undisputed facts reflected in the record of Scott's Minnesota conviction established that he "personally used a dangerous or deadly weapon" in the commission of that offense. (§ 1192.7, subd. (c)(23).) As defined in the corresponding pattern jury instruction, a "*deadly* [*or dangerous*] *weapon*" is one that is "used in such a way that it is capable of causing and likely to cause death or *great bodily injury*." (CALCRIM No. 3145 ("Personally Used Deadly Weapon (Pen. Code, § . . . 1192.7(c)(23) . . .).") In turn, "[*g*]*reat bodily injury* means significant or *substantial physical injury*. It is an injury that is greater than minor or moderate harm." (*Ibid.*, second italics added.) Thus, a conviction qualifies as a strike under section 1192.7, subdivision (c)(23) if it is for a felony during which the defendant personally used an object in a way capable of causing and likely to cause substantial physical injury.

Scott admitted these facts by virtue of his Minnesota guilty plea. Specifically, he admitted he personally used an object (an iron) "in a way capable of causing and likely to cause" (and, indeed *actually* causing) *substantial* physical injury. Although the Minnesota offense refers to substantial *bodily harm* and the California enhancement refers to substantial *physical injury*, the statutes use the same operative modifier: *substantial*. We view this commonality as determinative.

Because Scott *admitted* via his Minnesota guilty plea the facts on which the sentencing court based its conclusion that the conviction qualified as a strike under California law, the court did not engage in the type of judicial *factfinding* regarding *disputed* facts disapproved of by *Gallardo*. Rather, the court merely assumed its proper

19

role of determining the legal characterization of the undisputed facts. (See *Gallardo*, *supra*, 4 Cal.5th at p. 139, fn. 6 ["questions about the proper characterization of a prior conviction are for a court to resolve"].)

Scott argues we should read *Gallardo* as having "adopted the categorical/modified categorical approach discussed in *Descamps* and *Mathis*" (see part I, *ante*), which would have precluded the sentencing court from considering the *facts* underlying Scott's Minnesota conviction, and limited the court to a strict comparison of the *elements* of the offenses. (*Descamps*, *supra*, 570 U.S. at pp. 257, 261-264, 267-270.) We decline to read *Gallardo* in this manner for several reasons.

First, Scott, himself, acknowledges it is "admittedly unclear whether *Gallardo* adopted the categorical/modified categorical approach." Second, the *Gallardo* court observed that although *Descamps* and *Mathis* "drew on Sixth Amendment principles" (*Gallardo*, *supra*, 4 Cal.5th at p. 133), they "were decided on statutory, rather than constitutional, grounds" (*id.* at p. 134). Third, the *Gallardo* court acknowledged that ACCA analysis is "based on the *elements* of the crime of which the defendant was convicted," whereas California's Three Strikes law analysis is "based on the underlying *conduct* that gave rise to the conviction." (*Gallardo*, at p. 135.) Finally, the *Gallardo* court stated repeatedly that—even after *Descamps* and *Mathis*—sentencing courts may rely on undisputed facts admitted by the defendant during the prior conviction. (*Gallardo*, at p. 136 [sentencing court may consider facts "that the defendant admitted as the factual basis for a guilty plea"]; *id.* at p. 135 [Sixth Amendment jury right is violated only "when the sentencing court must rely on a finding regarding the defendant's conduct,

20

but the jury did not necessarily make that finding (*or the defendant did not admit to that fact*)" (italics added)].)

In sum, even if *Gallardo* applied retroactively, it would not entitle Scott to relief because the sentencing court considered only those undisputed facts expressly authorized by *Gallardo*.

## DISPOSITION

The petition is denied.

HALLER, J.

I CONCUR:


McCONNELL, P. J.

Dato, J., concurring.

I concur in part II of the majority opinion and its conclusion that the Supreme Court's decision in *People v. Gallardo* (2017) 4 Cal.5th 120 should not be applied retroactively.  But part III unnecessarily confronts a much more difficult question:  Can a court rely on a defendant's gratuitous comments in a plea colloquy to establish facts beyond the necessary elements of the crime so as to decide if a prior conviction qualifies as a serious or violent felony for sentencing under the California Three Strikes law? (Pen. Code, § 667, subds. (b) and (d).)  Because we need not reach this additional—and in my view more problematic—issue, I decline to join part III.

DATO, J.

1