Filed 11/18/21  P. v. Cantor CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARMELO CANTOR,<br><br>    Defendant and Appellant. | D078400<br><br><br>(Super. Ct. No. INF1900055) |

APPEAL from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge, and James S. Hawkins (Retired Judge of the Riverside Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Affirmed.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Carmelo Cantor of three counts of aggravated rape of a child under age 14 (Pen. Code, §§ 269, subd. (a)(1), 261, subd. (a)(2); counts 1, 2, and 4), one misdemeanor count of battery as a lesser included offense of aggravated sexual penetration of a child under age 14 (*id.*, §§ 242, 269, subd. (a)(5); count 3), and one misdemeanor count of violating a court order (*id.*, § 166, subd. (a)(4); count 5).[1] The trial court sentenced him to prison for an indeterminate term of 45 years to life.

The victim was Cantor's daughter, Doe, who was 15 years old when she testified at trial. Doe testified that, from a young age, she was physically abused by her father if she failed to obey him. She described how, beginning when she was 12 or 13, Cantor would demand intercourse by telling her he wanted to have "a little fun," and she testified that, when she told him no, he became angry or threatened her if she failed to comply with his demands.

Cantor's only contention on appeal is that the trial court erred by failing to instruct on unlawful sexual intercourse with a minor (§ 261.5, subd. (d)), which he claims is a lesser included offense of aggravated rape of a child. We conclude the trial court did not err in failing to instruct on unlawful sexual intercourse with a minor, and assuming any error occurred, it was harmless. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Doe was 15 years old at the time of trial. She testified that the rule in her house was to obey her father "in everything," and that if she failed to obey him, he would hit her.[2] He began hitting her as a consequence for disobedience when she was nine years old. He would hit her with "whatever

---

[1]    Unspecified statutory citations are to the Penal Code.

[2]    Evidence at trial established that Cantor was about 21 years older than Doe.

2

he found": a belt, a flyswatter, or his hand. He would also "scold" her when she failed to obey by taking her phone away, and by forbidding her from going out, talking to friends, or being by herself. Doe testified that she was not strong enough to push her father off of her or to prevent him from touching her.[3]

Doe testified that, before she disclosed the abuse, she had contact with Child Protective Services (CPS) regarding the physical abuse inflicted by Cantor. She began cutting herself and was seeing a therapist, but she did not disclose the sexual abuse to her therapist or to CPS. Doe eventually disclosed the abuse to her mother, who instructed Doe to call the police. Doe recalled speaking with a police investigator regarding her allegations of abuse about one year before the trial. The interview, which had been recorded, was played for the jury at trial. We summarize the evidence from the trial as well as Doe's interview below.

*Count 1*

Doe testified that Cantor began sexually abusing her when she was 12 or 13 years old. She described the first incident, which occurred on a school holiday—either Independence Day or Labor Day—when she was 12 or 13 years old. As she was lying in her mother's bed early in the morning, she saw Cantor looking out the window as her mother left for work. Cantor laid on the bed next to Doe and began touching her by reaching into her shorts and touching her vaginal area over her underwear. Then he touched his own penis. He asked if he could insert his penis inside her "and play a little," as he started to remove his pants. He told her that if she did not do it "he would scold [her], he would hit [her]." He told her not to tell her mother or anyone

---

[3] At the time of trial, Doe was under five feet tall. Cantor is five feet, seven inches tall and weighs 200 pounds.

else, because "that would destroy him." Doe could not see him but could hear him undress. He laid behind her as she lay on her side and put his penis in her vagina and "started playing," that is, "moving a lot." This hurt a lot, and when he stopped moving, he asked if it hurt, and she told him it did. He told her to go to the bathroom and clean herself, and that "this would be a secret [they] would keep."

In her interview the prior year, Doe told the investigator that the first time Cantor sexually abused her was on Labor Day when she was 12 years old and in seventh grade. Cantor had the day off, and she saw him "checking out the window" to see "when [her] mom left." He grabbed her leg and then her hips or stomach and said, " '[L]et's have a little fun.' " She told him no. He pulled down Doe's shorts and underwear and removed his own pants and underwear "and then he started doing what he wanted to do." She told the investigator Cantor put his "dick" inside her vagina and then, when "the sperm [came] out," he "told [her] to go to the restroom" and clean up. She said it hurt "a lot." She told the investigator that she "never opened [her] eyes" and she "was, like, having a dream."[4] She told her father she did not want to "have a relationship with [him]" but "he still [kept] doing it" and she "got all nervous." Cantor told her, " 'Don't tell your mother we did this.' " Cantor continued to sexually abuse her after this.

---

[4]    The sexual assault child abuse investigator testified that, in his experience, survivors of sexual assault often tried to distance themselves from traumatic moments as they experienced them and would sometimes talk about being asleep during the abuse. He observed that, even though Doe described herself as having a dream or being asleep, she was still able to describe the details of the assaults.

*Count 2*

Doe testified regarding another incident of abuse that occurred when she was 13 years old and her mother was out of the house taking her sibling to an appointment. Cantor hugged her from behind and "started to move himself." He asked if he could put his penis inside of her again, and he became angry when she said no. He lowered her shorts and underwear and "put it inside of [her]." It hurt her "a lot. It was very painful in [her] vagina." Afterward he told her to go to the bathroom and clean herself. He told her not to say anything to her mother "[b]ecause it would ruin his life and he would go to jail."

In her interview, Doe told the investigator that Cantor sexually abused her in her home when she was 13 years old, when her mother was out of the house taking her sibling to a therapy appointment. Doe said she was watching television when she saw Cantor closing the curtains. He said, "Oh, we're going to have a little fun." She said she did not want to, but "he just started doing it again." He pulled her shorts and underwear down to her ankles. He took off his own clothes, put his penis in her vagina, and told her to close her eyes. She "got almost sleepy" and "fell asleep," but then "[her] vagina started hurting." She "told him to stop because it was hurting," and he went to the restroom "to clean everything off."[5] He told her he would not do it again, but he did.

---

[5] On cross-examination, defense counsel asked Doe, "How did you know that your father put his penis in your vagina if you were asleep?" Doe responded, "Because I felt it." Defense counsel asked, "And did you feel it when you woke up, or how did you feel it?" Doe responded, "I heard his voice." Doe later testified, "I heard his voice. When I was asleep, I heard his voice. He said, 'Okay. Get up and clean yourself,' " and her body felt sore.

*Count 3*

While Doe was still 13 years old, Cantor took her for a driving lesson. Doe was driving and Cantor was in the front passenger seat. He directed her to a lemon field. During her interview and her direct testimony, Doe said he touched her skin under her underwear and put his finger in her vagina. However, on cross-examination, Doe stated that Cantor touched her vaginal area over her clothing while she was driving. She told him to stop because she "was feeling uncomfortable." He moved his hand away, but he became angry. They arrived at the lemon field and there was no one around.

Doe told the investigator that Cantor "put his arm underneath [her] vagina" as she was driving "and [her] skin got spooked. [She] got nervous. [Her] arms were sweating. [She] was sweating and he [said], 'Let's have a little fun again. Let's have fun more [*sic*] every day.'" She told him she did not want "to do anything with [him]." Then "he forced [her] to park[] and go to the . . . lemon bushes."

*Count 4*

At the lemon field, Cantor was angered by Doe's disobedience and directed her to stop the car, to get out, and to lower her shorts and underwear. He asked if he could put his penis in her vagina and asked her to bend down. She followed his instructions because "if [she] didn't obey, he would scold [her]." She described how, as she was bent in "a doggie pose," with her feet and hands on the ground and her "behind" in the air, he lowered his shorts and underwear and put his penis in her vagina, as he held her waist with his hands. He moved his body with his penis in her vagina. She felt nervous and fearful and felt pain in her vagina. When he was done, he moved away, pulled up his shorts and underwear, and told her to do the same. He drove them home from the lemon field.

In her interview, Doe told the investigator that Cantor told her he had to "give [her] a punishment," and he "forced [her] to get out of the car and go to the lemons." She "got forced to" pull down her pants and underwear, and Cantor "put his dick on [her] vagina again." She then clarified that she meant he put it "inside." She "was standing," and "[he], like, forced [her] to do it," and when he finished he asked her if she liked it, and "he forced [her] to say yes, but obviously no, [she] didn't like it." Doe told the investigator that Cantor threatened to take away her phone if she did not say that she liked it. When they were driving home, Cantor saw Doe crying and told her, " 'Don't cry. That didn't hurt.' "

*Count 5*

On January 10, 2019, a judge issued a criminal protective order prohibiting Cantor from having any contact with Doe or her mother. Between January 18, 2019 and January 28, 2020, Cantor called Doe's mother from jail 92 times.

As previously noted, the jury convicted Cantor on three felony counts of aggravated rape of a child under age 14 (counts 1, 2, and 4), one misdemeanor count of battery as a lesser included offense of aggravated sexual penetration of a child under age 14 (count 3), and one misdemeanor count of violating a court order (count 5). Cantor appeals, challenging the court's failure to instruct on a lesser included offense relating to counts 1, 2, and 4.

7

# DISCUSSION

## I.

### *The Trial Court Did Not Err in Failing to Instruct*
### *on Unlawful Sexual Intercourse*

Cantor contends the trial court committed reversible error by failing to instruct the jury that unlawful sexual intercourse with a minor (§ 261.5, subd. (d)) is a lesser included offense of the charged crime of aggravated rape of a child under age 14 (§ 269, subds. (a)(1) & (a)(2)).  We disagree.

" 'An instruction on a lesser included offense must be given only if there is substantial evidence from which a jury could reasonably conclude that the defendant committed the lesser, uncharged offense, but not the greater, charged offense.' [Citation.]  The 'substantial evidence requirement is not satisfied by " '*any* evidence . . . no matter how weak,' " but rather by evidence from which a jury . . . could conclude "that the lesser offense, but not the greater, was committed." ' [Citation.]  'On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense.' " (*People v. Nelson* (2016) 1 Cal.5th 513, 538.)

There are two tests for determining whether an uncharged crime is a lesser included offense.  " ' "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.  Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." ' " (*People v. Lopez* (2020) 9 Cal.5th 254, 269-270 (*Lopez*).)

Unlawful sexual intercourse is "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the

8

person is a minor." (§ 261.5, subd. (a).) "Any person 21 years of age or older who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony." (*Id.*, subd. (d).) Thus, the required elements to prove an offense of unlawful sexual intercourse with a minor under age 16 are: (1) the defendant had sexual intercourse with another person, (2) the defendant and the other person were not married to each other at the time of the intercourse, (3) the defendant was at least 21 years old at the time of the intercourse, and (4) the other person was under the age of 16 at the time of the intercourse. (CALCRIM No. 1070; § 261.5, subds. (a), (d); see *People v. Woods* (2015) 241 Cal.App.4th 461, 478.)

Aggravated rape of a child is defined as the forcible rape of a child who is under 14 years of age and seven or more years younger than the defendant. (§ 269, subd. (a)(1).) Rape, in turn, is "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [¶] . . . [¶] [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2); accord *People v. Scott* (2000) 83 Cal.App.4th 784, 794, fn. 4 (*Scott*) [specifying the elements of forcible rape].) For counts 1, 2, and 4 (aggravated rape of a child under the age of 14), the jury was instructed that the People had to prove (1) defendant committed rape by force on Doe, and (2) when defendant acted, Doe was under the age of 14 years and was at least seven years younger than defendant. (CALCRIM No. 1123; § 269, subd. (a)(1).) The jury was further instructed that, to find defendant committed forcible rape, the People had to prove: (1) defendant had sexual intercourse with Doe, (2) he and Doe were not married to each other at the time of the intercourse, (3) Doe did not consent to the

9

intercourse, and (4) defendant accomplished the intercourse by force, duress or menace to Doe. (CALCRIM No. 1000; § 261, subd. (a)(2).)[6]

Cantor does not contend that, under the *elements* test, unlawful sexual intercourse with a minor is a lesser included offense of aggravated rape of a child under age 14. Any such argument would fail because unlawful sexual intercourse under section 261.5, subdivision (d) includes an element—that Cantor was at least 21 years old at the time of the act—that is not contained in the charged offenses of aggravated rape of a child. Cantor also does not contend unlawful sexual intercourse with a minor is a lesser included offense under the *conventional* accusatory pleading test. Again, any such argument would fail because the information contains no allegations regarding Cantor's age. (See *Lopez*, *supra*, 9 Cal.5th at pp. 269-270 [accusatory pleading test is met where the facts actually alleged in the accusatory pleading include all the elements of the lesser offense].)

---

[6] The jury was further instructed: "Intercourse is accomplished by force if a person used enough physical force to overcome [Doe's] will. [¶] Duress means a direct or implied threat of force, violence, danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise. Some circumstances that you may consider in determining whether duress existed is whether the acts occurred in an isolated location, the disparity in physical size, whether there was frequent interaction between the defendant and [Doe], whether the abuse was continuous or involve[d] a single incident, whether statements were made indicating negative occurrences would result from disclosure, [and] the presence or absence of psychological dominance. When deciding whether the act was accomplished by duress, consider all the circumstances, including [Doe's] age and her relationship to the defendant. [¶] Menace means a threat, statement, or act showing an intent to injure someone. [¶] Intercourse is accomplished by fear if [Doe] was actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it." (CALCRIM No. 1000.)

10

Nevertheless, Cantor contends that unlawful sexual intercourse with a minor is a lesser included offense in this case under the "*expanded* accusatory pleading test" that the court applied in *People v. Ortega* (2015) 240 Cal.App.4th 956, 967 (*Ortega*). (Italics added.) Under this approach, "[t]he evidence adduced *at the preliminary hearing* must be considered in applying the accusatory pleading test when the specific conduct supporting a holding order establishes that the charged offense necessarily encompasses a lesser offense." (*Ibid.*, italics added.) Applying this expanded test, Cantor contends unlawful sexual intercourse with a minor qualifies as a lesser included offense of the charged aggravated rape offenses because the preliminary hearing transcript "put the parties on notice that [Cantor] was born on October 28, 1984" and thus was at least 21 years old.[7]

We considered and rejected the expanded accusatory pleading test in *People v. Alvarez* (2019) 32 Cal.App.5th 781 (*Alvarez*), and we decline Cantor's invitation to reach a contrary conclusion here. As we explained in *Alvarez*, the expanded accusatory pleading test is inconsistent with the Supreme Court's decision in *People v. Montoya* (2004) 33 Cal.4th 1031 (*Montoya*). (*Alvarez*, at p. 787.) *Montoya* instructs: "Consistent with the primary function of the accusatory pleading test—to determine whether a defendant is entitled to instruction on a lesser uncharged offense—we consider *only* the pleading for the greater offense." (*Montoya*, at p. 1036, fn. omitted.)

The *Ortega* court's admonition to consider "[t]he evidence adduced at the preliminary hearing" (*Ortega, supra*, 240 Cal.App.4th at p. 967) conflicts

_____

[7] Relying on notes, an investigator testified at the preliminary hearing that Cantor's birthday was in October 1984. However, at trial, Doe's mother testified that Cantor's birthday is in July 1982. The criminal protective order likewise indicates that Cantor's birthday is July 1982.

with the Supreme Court's statement in *Montoya* to "consider *only* the pleading" when "determin[ing] whether a defendant is entitled to instruction on a lesser uncharged offense." (*Montoya*, *supra*, 33 Cal.4th at p. 1036.) As we explained in *Alvarez*, "*Montoya* disapproved of *People v. Rush* (1993) 16 Cal.App.4th 20, which"—like *Ortega*—"considered evidence from the preliminary hearing in applying the accusatory pleading test." (*Alvarez*, *supra*, 32 Cal.App.5th at p. 788.) But "*Ortega* did not cite *Montoya* or attempt to reconcile its analysis." (*Ibid*.) We therefore declined to follow *Ortega* in *Alvarez*. (*Id*. at pp. 787-788.)

Other courts have similarly rejected application of an expanded accusatory pleading test as contrary to Supreme Court precedent. (See *People v. Macias* (2018) 26 Cal.App.5th 957, 964; *People v. Munoz* (2019) 31 Cal.App.5th 143, 158 (*Munoz*).) While no published decision has followed *Ortega*, courts since *Montoya* have continued to apply the rule excluding evidence beyond that in the accusatory pleading. (See *People v. Smith* (2013) 57 Cal.4th 232, 244 (*Smith*) ["The trial court need only examine the accusatory pleading."]; *People v. Chaney* (2005) 131 Cal.App.4th 253, 257 [" 'to determine whether a defendant is entitled to instruction on a lesser uncharged offense—we consider *only* the pleading for the greater offense' "]; see also *People v. Banks* (2014) 59 Cal.4th 1113, 1160 ["When applying the accusatory pleading test, '[t]he trial court need only examine the accusatory pleading.' "], disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

We continue to follow *Alvarez*, consistent with the above line of cases, and reject Cantor's request to instead adopt *Ortega*'s expanded accusatory pleading test. Cantor suggests *Alvarez* and other cases declining to follow *Ortega* are wrongly decided. In his reply brief, he contends *Montoya* is

distinguishable because it dealt with a case involving "multiple convictions" (i.e., a situation where a defendant is charged with and convicted of both the greater and lesser offenses). But as we previously explained, "We do not read *Montoya* so narrowly. The court articulated the general standard for the accusatory pleading test before considering its application in a multiple conviction case. [Citation.] 'Thus, *Montoya* intended its rule not only to apply in the context of multiple convictions, but also in the context of determining whether instructions on a lesser offense were warranted.' " (*Alvarez, supra,* 32 Cal.App.5th at pp. 788-789, fn. omitted, quoting *Munoz, supra,* 31 Cal.App.5th at p. 158.) We similarly reject Cantor's argument that the language in *Montoya,* limiting application of the accusatory pleading test to the actual pleadings, is dicta. It is clear that the expanded accusatory pleading test proposed by Cantor cannot be reconciled with *Montoya*'s analysis. As we concluded in *Alvarez,* "[a]s an intermediate appellate court, we are required to follow Supreme Court precedent" and thus " 'we are not to look beyond the language of the accusatory pleading itself in assessing lesser included offenses.' " (*Alvarez,* at p. 788.)[8] Because Cantor acknowledges that the element concerning his age is established only in the preliminary hearing transcript and not in the pleadings, he has not established unlawful sexual intercourse with a minor is a lesser included offense under the accusatory pleading test. The trial court therefore did not err in failing to instruct on this offense.

---

[8] Cantor additionally argues it "makes no sense" to allow the prosecution to dictate whether a lesser included offense exists by controlling how the offense is charged in an accusatory pleading. We rejected this line of argument in *Alvarez,* noting in part that "[i]t is the prosecutor's role to decide what charges (and thereby what lesser included offenses) are presented to the jury." (*Alvarez, supra,* 32 Cal.App.5th at pp. 789-790.)

13

Even if we were to find that unlawful sexual intercourse is a lesser included offense of aggravated rape of a child, we would still conclude the trial court did not err because there is no substantial evidence to support such an instruction on this record. As previously noted, "instructions on lesser included offenses 'are required whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury.' " (*People v. Campbell* (2015) 233 Cal.App.4th 148, 162; accord *People v. Sullivan* (2007) 151 Cal.App.4th 524, 562 [court has sua sponte duty to instruct only " ' " 'when the evidence raises a question as to whether all of the elements of the charge offense were present' " ' "]; *Smith, supra*, 57 Cal.4th at p. 245 ["a trial court is not required to instruct the jury on a necessarily included lesser offense ' "when there is no evidence that the offense was less than that charged" ' "].) Cantor contends "a jury could have rationally found that [he] committed the lesser offense of unlawful sex with a minor" because, with respect to counts 1 and 2, Doe testified she was "dream[ing]" or "sleepy" when the intercourse occurred and, as to count 4, "the jury could have been troubled by the fact that [Doe] would willfully choose to place herself in a situation where she would be forcibly raped and thus . . . the prosecution had failed to prove [the intercourse] was by the use of force or duress."[9] We disagree. Doe testified that, from a young age, her father hit and "scold[ed]" her if she disobeyed him. He was bigger and stronger than she was, and she was unable to fight him off. With respect to count 1, the incident on the school holiday, Doe testified she was nervous and

---

[9] To the extent Cantor is suggesting that Doe implicitly consented to intercourse, we reject his argument. Doe was 12 and 13 years old at the time of the crimes. In California, there is a "long-standing presumption that children *under age 14* cannot give legal consent to sexual activity." (*People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 11.)

fearful her father would sexually abuse her, she told him "no," and he threatened her that if she did not do what he told her to do, he would "scold" or hit her. With respect to count 2, the subsequent rape when her mother was not home, Doe testified that when she told her father "no," he became angry and removed her clothes. Similarly, with respect to count 4 (at the lemon grove), Doe testified that Cantor became angry when she told him to stop touching her vagina as she drove. She became nervous and fearful, and she followed his instructions to undress and bend over because she feared he would "scold" her. With respect to each count, she testified regarding the pain she experienced. Doe's testimony established that Cantor accomplished each rape through force, duress, menace, or fear. (§ 261, subd. (a)(2); *Scott*, *supra*, 83 Cal.App.4th at p. 794, fn. 4.) Cantor did not testify, so there was no contrary evidence, and the jury clearly believed Doe's accounts on these points.

Doe's testimony that she was asleep or dreaming when Cantor assaulted her does not undermine her testimony. As the sexual assault child abuse investigator testified, sexual assault victims try to distance themselves from traumatic moments as they experience them and may describe themselves as sleeping at the time of the assault. Even though Doe described herself as being asleep or dreaming, she was still able to describe the details of the assaults. "[T]he 'substantial' evidence required to trigger the duty to instruct on such lesser offenses is not merely '*any* evidence . . . no matter how weak' [citation], but rather ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed." (*People v. Cruz* (2008) 44 Cal.4th 636, 664.) No reasonable juror would believe that Doe's testimony that she was "having a dream" or "sleepy" when Cantor sexually abused her discredited her further

15

testimony establishing that the rapes were accomplished through force, duress, or fear. Similarly, even if Doe did ask Cantor to teach her how to drive, no reasonable juror would agree that such a request negated Doe's testimony that the rapes were accomplished by force, duress, or fear. Nor would a reasonable juror credit Cantor's argument that, if Doe asked her father for driving lessons, she "willfully [chose] to place herself in a situation where she would be forcibly raped." On this record, there is no substantial evidence justifying instruction on the offense of unlawful sexual intercourse with a minor. The trial court therefore did not err in failing to instruct on this offense.

## II.

### *Any Assumed Error Was Harmless*

Even if the court erred in failing to instruct on unlawful sexual intercourse with a minor, any assumed error was harmless. We will reverse a judgment based on failure to instruct on a lesser included offense "only if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred [citation]." (*People v. Breverman* (1998) 19 Cal.4th 142, 178 (*Breverman*), citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)[10] " 'The question is not what a jury *could* have done, but what a jury *likely* have done if properly instructed.' " (*People v. Larsen* (2012) 205 Cal.App.4th 810, 831.) In evaluating whether the failure to give a lesser included offense instruction is prejudicial error, "an appellate court may consider, among other things, whether the evidence

---

[10]    We reject Cantor's argument that the purported error amounted to a constitutional violation. "The sua sponte duty to instruct fully on all lesser included offenses suggested by the evidence arises from California law alone." (*Breverman, supra,* 19 Cal.4th at p. 149.)

supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Breverman*, at p. 177.) "We also consider the instructions as a whole, the jury's findings, and the closing arguments of counsel." (*Larsen*, at p. 831.)

In this case, it is not reasonably probable that Cantor would have obtained a more favorable outcome had the jury been instructed on the offense of unlawful sexual intercourse with a minor. The primary difference between the lesser offense of unlawful sex with a minor and the greater offense of aggravated child rape is that aggravated rape requires proof that the intercourse was accomplished without consent, by force, violence, duress, menace, or fear of immediate and unlawful bodily injury. (See § 261, subd. (a)(2); *Scott*, *supra*, 83 Cal.App.4th at p. 794, fn. 4; CALCRIM No. 1000.) As previously noted, the jury was instructed that "[d]uress means a direct or implied threat of force, violence, danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise." The jury was instructed to consider the following circumstances to determine whether duress existed: "whether the acts occurred in an isolated location, the disparity in physical size, whether there was frequent interaction between the defendant and [Doe], whether the abuse was continuous or involve[d] a single incident, whether statements were made indicating negative occurrences would result from disclosure, the presence or absence of psychological dominance[, . . . and Doe's] age and her relationship to the defendant." (CALCRIM No. 1000.) The jury was further instructed that "[i]ntercourse is accomplished by fear if [Doe] was actually and reasonably afraid or she is actually but unreasonably afraid and the

defendant knows of her fear and takes advantage of it." (*Ibid.*) As previously discussed, Doe testified that from a young age, her father would hit and scold her if she disobeyed him. The offenses occurred when Doe's mother was not around. Cantor was significantly bigger and stronger than Doe, and she was unable to fight him off. Doe repeatedly testified that Cantor threatened to hit or scold her if she did not comply with his demands for intercourse. She testified that she told him no, but he did "what he wanted to do." In addition, Cantor forced her to say she liked the sexual abuse, when "obviously no, [she] didn't like it." Doe testified regarding the nervousness and fear she felt. On this record, there was no evidence that the rapes were accomplished under circumstances devoid of force, duress, or fear.

Cantor's reliance on *People v. Rodriguez* (2018) 26 Cal.App.5th 890 is unavailing. In that case, an inmate convicted of assault with a deadly weapon (a chain) contended the jury should have been instructed with simple assault. (*Id.* at pp. 895-898.) The appellate court reversed his conviction because there was evidence—including video and photographic evidence as well as eyewitness testimony—from which the jury could reasonably find the inmate assaulted the officers but did not use the chain as a deadly weapon. (*Id.* at pp. 900-902.) By contrast here, given Doe's uncontroverted testimony describing the circumstances of the rapes, it is not reasonably probable that a jury would have concluded the intercourse was accomplished without force, duress, or fear, even if the trial court had instructed on the offense of unlawful sexual intercourse with a minor. We therefore conclude that any assumed error was harmless because it is not reasonably probable Cantor would have obtained a more favorable outcome. (*Breverman*, *supra*, 19 Cal.4th at p. 178.)

## DISPOSITION

The judgment is affirmed.


                                                    GUERRERO, J.


WE CONCUR:



HUFFMAN, Acting P. J.



IRION, J.